COMMONWEALTH *vs.* CARMELO C. GERMANO.

Middlesex.   September 11, 1979. — November 23, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Statute,* Construction. *Court Reorganization Act. Practice, Criminal,* Trial by jury, Traffic violation.

A defendant found guilty in a District Court of a motor vehicle offense under G. L. c. 90, § 20F, inserted by St. 1978, c. 478, § 41, which carries with it no penalty of imprisonment or fine in excess of $100 for a first offense, is entitled to a de novo trial by a jury of six, and a person charged with such an offense is entitled to trial by a jury of six at any stage of the proceedings under G. L. c. 218, § 26A, inserted by St. 1978, c. 478, § 188, or G. L. c. 218, § 27A(c), as appearing in St. 1978, c. 478, § 189; the right is also specifically guaranteed by G. L. c. 278, § 18, as appearing in St. 1978, c. 478, § 302. [270-276]

COMPLAINTS received and sworn to in the First Eastern Middlesex Division of the District Court Department on February 17, 1979.

After an appeal to the jury session of the Third Eastern Middlesex Division of the District Court Department, questions of law were reported to the Appeals Court by *Sherman,* J. The Supreme Judicial Court granted a request for direct review.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

*Daniel E. Callahan* for the defendant.

ABRAMS, J.   At issue is whether a section of the legislation entitled, "An Act providing for the orderly administration of justice in the commonwealth," popularly known as the Court Reorganization Act, St. 1978, c. 478, eliminates the right to trial by jury for certain minor motor vehicle violations.

The defendant, Carmelo Germano, is charged with failing to keep to the right (G. L. c. 89, § 1), failing to stop on entering a through way (G. L. c. 89, § 9), and refusing to stop for a police officer (G. L. c. 90, § 25).   Germano signed written waivers of his right to counsel and his right to an initial jury trial.   After trial without a jury before a District Court judge, Germano was convicted on all three offenses, receiving fine sentences of $10, $20, and $25, respectively.

Germano seeks to appeal these convictions to a trial de novo in a jury of six session.   The Commonwealth has moved to dismiss his appeal, arguing that G. L. c. 90, § 20F (inserted by St. 1978, c. 478, § 41), prohibits jury trials of all motor vehicle violations (other than parking violations) punishable neither by imprisonment nor, in the case of a first offense, by a fine greater than $100.   The trial judge in the jury of six session reported [1] the issues raised by the Commonwealth's motion to dismiss.   We granted the Commonwealth's application for direct appellate review.   We hold that G. L. c. 90, § 20F,[2] does not eliminate Germano's right to a de novo trial by jury.

The report raises three questions regarding the correct procedures to be afforded those charged with minor motor vehicle violations under G. L. c. 90, § 20F:

"1.  Is the defendant entitled to a de novo trial by a jury of six after a finding of guilty of a motor vehicle offense

---

[1] More specifically, the report was filed pursuant to G. L. c. 278, § 30A, repealed by St. 1979, c. 344, § 48, as extended to jury of six session trials by G. L. c. 218, § 27A (*d*).  See *Commonwealth* v. *Henry's Drywall Co.*, 362 Mass. 552, 555 n.4 (1972).  Authorization for interlocutory reports from de novo trials in the District Court is now contained in Mass. R. Crim. P. 34, 378 Mass. 905 (effective July 1, 1979).

[2] The text of G. L. c. 90, § 20F, appears as an appendix to this opinion.

which carries with it no penalty of imprisonment or fine in excess of $100 for a first offense?

"2. What type of proceeding is referred to by the language contained in G. L. c. 90, s. 20F, paragraph 6, which provides: 'The decisions of the judge shall then be final, subject to NORMAL APPELLATE REVIEW'?

"3. Is a person charged with a motor vehicle offense which carries with it no penalty of imprisonment or fine in excess of $100 for a first offense entitled to trial by a jury at *any stage* of the proceedings under G. L., c. 218, s. 26A, or G. L., c. 218, s. 27A(c)?" (Emphasis furnished in report.)

We answer the first, and therefore the third, of these questions affirmatively, and find that decision of the present case does not require an answer to question 2.

Germano did not avail himself of the option provided by § 20F of paying the maximum fines provided for his alleged violations, and thus securing a noncriminal disposition of the charges against him. Instead, Germano has chosen to contest the validity of the charges against him by submitting to criminal prosecution. Section 20F provides that in order to institute the criminal prosecution of a contested case, the officer who issued the original citation[3] must "make a complaint" and "follow the procedure established for criminal cases." If "the procedure established for criminal cases" refers to the procedure generally applicable to misdemeanor prosecutions in the District Courts, Germano is entitled to a de novo trial by jury. G. L. c. 278, § 18. G. L. c. 218, § 26A.

However, the Commonwealth contends that "the procedure established for criminal cases" refers to a unique procedure "established" by § 20F itself. Section 20F makes no explicit reference to such a procedure. The Commonwealth observes, however, that the sixth paragraph[4] of the section

---

[3] As defined by G. L. c. 90C, § 1, a citation is only a notice of violation and does not by itself institute a criminal proceeding.

[4] The sixth paragraph reads as follows: "Either party may appeal the finding and disposition of the magistrate to a justice of the court in which

provides an appeal procedure from the "finding and dispo-
sition" of a magistrate. Such a magistrate, the Common-
wealth argues, must be viewed as the initial trier of fact in
*all* contested proceedings brought under § 20F. The Com-
monwealth adds that this appeal procedure leads to a de
novo hearing before a judge of a District Court. The stat-
ute's failure to provide for trial by jury before this judge and
its specific reference to "decisions of the judge" are said to
exclude implicitly the possibility of trial by jury at this stage
of the proceedings. Finally, the fact that the judge's deci-
sions "shall . . . be final" subject only to "normal appellate
review," is seen as limiting appeals to questions of law, and
as therefore precluding an appeal from such decisions to the
jury of six session.

We do not think that the Commonwealth's reading of
§ 20F can survive the Legislature's plainly expressed desire
to preserve the right of those in Germano's position to ob-
tain a trial by jury. It is the teaching of our cases that § 20F
must be read in the context of the Court Reorganization Act
taken "as a whole . . . to the end that, as far as possible, the
[entire legislative program] will constitute a consistent and
harmonious whole." *Haines* v. *Town Manager of Mans-
field*, 320 Mass. 140, 142 (1946). And the Court Reorgani-
zation Act, in addition to creating § 20F, contains two
separate sections specifically guaranteeing a right to trial by
jury to criminal defendants in the District Courts. St. 1978,
c. 478, §§ 302 & 188.

The first of these sections provides in part: "Notwith-
standing any other provision of law, a defendant after a
finding of guilty, jury-waived, in a district court . . . may
appeal therefrom and shall thereafter be entitled to a trial
de novo in a jury of six session . . . ." G. L. c. 278, § 18 (as
appearing in St. 1978, c. 478, § 302). The Commonwealth
argues that this language applies only to cases in which the

---

the case was heard, who shall then hear the case de novo. The decisions
of the judge shall then be final, subject to normal appellate review."

initial hearing is held before a "justice"; [5] § 20F, the Commonwealth maintains, implicitly requires that an initial hearing be held before a magistrate. Such a distinction, however, even if accurately drawn, is insufficiently explicit to overcome our well-established rule that "[e]xceptions to a general law, whether statutory or constitutional, should be strictly construed." *Commonwealth* v. *Yee,* 361 Mass. 533, 537 (1972). See *Baker Transp., Inc.* v. *State Tax Comm'n,* 371 Mass. 872, 877 (1977). We believe that, had the Legislature been engaged in drawing such a fine line as that suggested by the Commonwealth, it would have been explicit in denying the right to a trial by jury.

Section 188 of the Court Reorganization Act reinforces this conclusion. General Laws c. 218, § 26A (inserted by St. 1978, c. 478, § 188) provides, in part, that trial of criminal offenses in the District Courts "shall be by a jury of six, unless the defendant files a written waiver and consent to be tried by the court without a jury," in which case the defendant retains a right to appeal his conviction to a trial de novo in the jury of six session.

The Commonwealth marshals a highly technical argument to demonstrate that the Legislature intended to place § 20F proceedings outside the reach of G. L. c. 218, § 26A. The Commonwealth begins by observing that G. L. c. 218, § 26A, provides that both first instance and de novo jury trials must be held in "those jury sessions designated by [G. L. c. 218, § 27A] for the hearing of such appeals." Section 27A, the Commonwealth adds, does not provide for jury trials in every division of the District Courts.[6] This

---

[5] The first sentence of G. L. c. 278, § 18, reads, "Whoever is found guilty of a crime before a justice in a district court, or in the municipal court of the city of Boston, having filed the written waiver of trial by jury in the first instance provided by section twenty-six A of chapter two hundred and eighteen, may appeal the finding of guilty or the sentence imposed thereon to a jury-of-six session in accordance with section twenty-seven A of chapter two hundred and eighteen, and at the time of such finding of guilty or sentencing shall be notified of his right to take such appeal."

[6] Pursuant to G. L. c. 218, § 27A (b), the Administrative Justice of the District Court Department must designate at least one District Court divi-

situation, the Commonwealth continues, contrasts to that created by § 20F, which provides for the trial of all cases brought thereunder within the District Court division having jurisdiction of the judicial district in which the violation occurred. G. L. c. 90, § 20F, first par. The resulting possibility that a defendant prosecuted under § 20F might find himself in a nonjury trial division implies, the Commonwealth concludes, a legislative intent that the broad mandate in favor of trial by jury contained in G. L. c. 218, § 26A, not apply at all to cases within the scope of § 20F.

Rather than representing an elaborate "loophole," however, this difference between the two sections of the Court Reorganization Act can be more satisfactorily explained as the type of "gap" we have previously found to be virtually inevitable in any piece of legislation as complex as the court reorganization plan. See *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 345 (1978). And it is, in any event, sufficient to note once again that the Commonwealth's argument cannot overcome the strong presumption against implied exceptions to statutes of such general applicability as G. L. c. 218, § 26A.

In construing a statute we are also guided by the principle that "[i]t is not to be lightly supposed that radical changes in the law were intended where not plainly expressed." *Ferullo's Case*, 331 Mass. 635, 637 (1954). In the context of criminal law it is difficult to imagine a more radical change than elimination of the right to trial by jury. Prior to the enactment of § 20F, violations now within its scope were processed in a manner indistinguishable from that followed in the case of other misdemeanor offenses within the final jurisdiction of the District Courts. See generally G. L. c. 90C, § 1 (as amended through St. 1975, c. 418), and G. L. c. 90C, § 2 (as amended through St. 1968, c. 725).

sion in each county, subject to certain requirements, for the hearing of jury trials. Every division is authorized to hold jury of six sessions, G. L. c. 218, § 27A (*a*), but not all divisions have been so designated.

The right to a trial by jury[7] was specifically guaranteed by the then existing version of G. L. c. 278, § 18 (as amended through St. 1974, c. 167).

Prior law, however, provided no procedure for securing a noncriminal disposition of those minor motor vehicle offenses now within the scope of § 20F. The absence of such a procedure contrasted sharply with its availability in the case of parking violations. See G. L. c. 90, § 20A (as amended through St. 1962, c. 786, §§ 1-5) and G. L. c. 90, § 20C (as amended through St. 1977, c. 612).

Since 1934, G. L. c. 90, § 20A, has allowed those charged with parking violations to pursue one of two options: (1) confess the offense charged and pay a specified fine, thus securing a noncriminal disposition, or (2) contest the charges in a criminal proceeding. St. 1934, c. 368, § 1. For forty-five years the procedure to be followed under this second option, which is to say the procedure to be followed in all contested cases, has been described in the statute as "the procedure established for criminal cases." G. L. c. 90, § 20A, third par., inserted by St. 1934, c. 368, § 1, and most recently amended by St. 1978, c. 478, § 39. Similar language appears in G. L. c. 90, § 20C, sixth par., inserted by St. 1962, c. 786, § 6, and most recently amended by St. 1978, c. 478, § 40.[8]

Viewed in this light, the critical phrase "procedure established for criminal cases" as used in § 20F, must be given the long-standing meaning ascribed to this precise language as it appears in a virtually identical context in the parking violation statutes. "[I]f possible a statute is to be interpreted in harmony with prior enactments to give rise to a consistent body of law." *Hadley* v. *Amherst*, 372 Mass. 46, 51 (1977).

---

[7] The defendant could choose between trial by a jury of twelve in the Superior Court and trial by a jury of six in the District Courts. G. L. c. 278, § 18 (as amended through St. 1974, c. 167).

[8] The only amendments to §§ 20A & 20C contained in St. 1978, c. 478, conformed the language of the sections to the renamed District Court Department and Boston Municipal Court Department.

We have indicated that the procedure to be followed in criminal prosecutions of parking violations is "the usual criminal procedure." *Commonwealth* v. *Marder,* 346 Mass. 408, 410 (1963), appeal dismissed, 377 U.S. 407 (1964). And the Commonwealth concedes that, as used in G. L. c. 90, §§ 20A and 20C, the "procedure established for criminal cases" refers to the procedure applicable to misdemeanor prosecutions in general, and thus guarantees the right to trial by jury.

Moreover, it appears that the Legislature relied heavily on § 20A in drafting the new § 20F. The first two and one-half sentences[9] of the fifth paragraph of § 20F offer a virtually word-for-word transcription of language in the third paragraph of § 20A (as it existed at the time of the enactment of § 20F) specifying the procedure for prosecuting parking violations. G. L. c. 90, § 20A (as amended by St. 1962, c. 786, §§ 1-5). "The Legislature is presumed to use a term in the sense in which it has been used before in the same context." *Commonwealth* v. *Mercy Hosp.,* 364 Mass. 515, 520 (1974). And, "[w]here the Legislature uses the same words in several sections which concern the same subject matter [here, minor motor vehicle violations], the words 'must be presumed to

---

[9] The following language, with the exception of the emphasized phrase, was taken directly from § 20A: "Should any person notified to appear hereunder fail to appear and *to pay the fine hereinbefore provided,* or having appeared desire not to avail himself of the benefits of the procedure established by this section, the clerk shall as soon as may be notify the officer concerned, who shall forthwith make a complaint and follow the procedure established for criminal cases. If any person fails to appear in accordance with the summons issued upon such complaint, the clerk shall, in the case of a first or second offence but for no subsequent offence, send such person, by registered mail, return receipt requested, a notice that the complaint is pending and that, if the person fails to appear within twenty-one days from the sending of such notice, a warrant for his arrest will be issued and the registrar of motor vehicles notified to suspend his right or license to operate motor vehicles. If any person fails to appear within twenty-one days from the sending of such notice or in accordance with the summons issued upon such complaint, as the case may be . . ." (emphasis added). The emphasized language replaced conditional language ("and, if a fine is provided hereunder, to pay the same") in § 20A.

have been used with the same meaning in each section.'"
*Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass.
184, 188-189 (1969), quoting from *Liddell* v. *Standard Accident Ins. Co.*, 283 Mass. 340, 346 (1933).

We believe that the Legislature, by the enactment of
§ 20F, sought to provide "a sensible, simple, administrative
method of making necessary traffic rules effective, without
clogging the courts, causing undue public inconvenience
and resentment, or depriving any citizen of full opportunity
at his option for a judicial determination of facts." *Commonwealth* v. *Marder*, 346 Mass. 408, 411 (1963), appeal
dismissed, 377 U.S. 407 (1964).

The legislative history of § 20F also strongly suggests that
§ 20F was enacted in an effort to treat minor motor vehicle
infractions in a manner similar to parking violations. The
two and one-half sentences in the fifth paragraph of § 20F
apparently borrowed from § 20A displaced language that in
prior drafts of § 20F would have explicitly provided for a
unique, nonjury trial procedure.[10]

Thus, we conclude that the Legislature intended to conform the procedure for prosecuting violations under § 20F
to that already in effect for the prosecution of parking violations. Consequently, we hold that Germano is entitled to
appeal to a de novo trial by a jury of six. The case is remanded to the jury of six session for further proceedings
consistent with this opinion.[11]

*So ordered.*

---

[10] 1977 House Doc. No. 6804, § 35.  1977 House Doc. No. 6906, § 35.
1978 Senate Doc. No. 1322, § 35.  1978 Senate Doc. No. 1538, § 41.

[11] The second question reported to us is not presented by this case. Germano was not tried before a magistrate, but rather before a judge of the
District Court. The "normal appellate review" called for in the sixth
paragraph of § 20F applies only to appeals of cases in which there has
been an initial "finding and disposition" by a magistrate. We intimate no
view on the proper construction or the constitutionality of the sixth
paragraph.

### APPENDIX.

General Laws c. 90, § 20F, inserted by St. 1978, c. 478, § 41, reads as follows:

"Notwithstanding any provisions of the General Laws to the contrary, any police officer who takes cognizance of a violation of chapters eighty-five to ninety D, inclusive, involving the operation of a motor vehicle, other than a violation involving the parking of motor vehicles, where the maximum statutory penalty does not exceed one hundred dollars for the first offense and which does not provide for a penalty of imprisonment, shall forthwith give to the offender a citation, known throughout the commonwealth as a uniform traffic citation. Such citation shall contain the statement provided for under the definition of 'citation' in section one of chapter ninety C, and shall notify the offender that he may waive his right to trial and pay the maximum statutory penalty by appearing before a magistrate of the district court having jurisdiction of the judicial district in which the violation occurred at any time during office hours not later than ten days after the date of said violation. The administrative justice for the district court department, or the administrative justice for the Boston municipal court department as the case may be, shall prepare, sign, and distribute a citation to be used by all law enforcement officers, including the state police, officers of the registry and the metropolitan district commission police, which shall include a space in which the officer shall insert the name of the district court having jurisdiction of the judicial district in which the violation occurred. Each citation, which shall be printed in quadruplicate, shall contain a space for the name and address of the offender, the number of his license to operate motor vehicles, the registration number of the vehicle involved, the time and place of the violation, the specific offense charged, the maximum statutory penalty for such offense, and the time and place for appearance in the event a trial is necessary or desired. Such citation shall be signed by the officer and by the offender to acknowledge that the citation has been received.

"At or before the completion of each tour of duty, the officer shall give to his commanding officer those copies of each citation issued during such tour of duty. Said commanding officer shall retain one copy for department use and shall at a time not later than the beginning of the next court day cause to have delivered two such copies to the magistrate of the court before whom the offender has been notified to appear. The magistrate of each district court shall maintain a separate docket for all such citations and shall periodically forward copies of such citations to the registry. No other form of notice, except as provided in this section, shall be given to the offender.

"Any person receiving a citation pursuant to this section may appear before a magistrate of the appropriate district court and confess the of-

fense charged, either personally or through an agent duly authorized in writing, or may mail to such magistrate, with the citation, the maximum statutory fine provided therein. Such payment shall be made only by postal note, money order, or check. The payment to the magistrate of such penalty shall operate as a final disposition of the case.

"If the citation is so returned by the offender, such an appearance shall not be deemed a criminal proceeding for the purposes of this chapter. The offender shall not be required to report to any probation officer and no record of the case shall be entered in any probation records.

"Should any person notified to appear hereunder fail to appear and to pay the fine hereinbefore provided, or having appeared desire not to avail himself of the benefits of the procedure established by this section, the clerk shall as soon as may be notify the officer concerned, who shall forthwith make a complaint and follow the procedure established for criminal cases. If any person fails to appear in accordance with the summons issued upon such complaint, the clerk shall, in the case of a first or second offence but for no subsequent offence, send such person, by registered mail, return receipt requested, a notice that the complaint is pending and that, if the person fails to appear within twenty-one days from the sending of such notice, a warrant for his arrest will be issued and the registrar of motor vehicles notified to suspend his right or license to operate motor vehicles. If any person fails to appear within twenty-one days from the sending of such notice or in accordance with the summons issued upon such complaint, as the case may be, the court may issue a warrant for his arrest and the registrar shall be notified that he may suspend the right or license of such person to operate a motor vehicle after due hearing pursuant to section twenty-two, because of his failure to so appear. The magistrate of the court shall, if the citation is properly returned at a later time, notify the registrar forthwith of such fact.

"Either party may appeal the finding and disposition of the magistrate to a justice of the court in which the case was heard, who shall then hear the case de novo. The decisions of the judge shall then be final, subject to normal appellate review.

"The magistrates of the respective district courts shall distribute such citations to the commanding officers of police departments upon request and may request a receipt therefor. Magistrates shall exercise their authority hereunder subject to the limitations of section sixty-two C of chapter two hundred and twenty-one.

"The term district court as used in this section shall include the Boston municipal court department."