COMMONWEALTH vs. WILLIAM A. SILVA.

Essex.   October 9, 1980. — December 9, 1980.

Present: BROWN, GREANEY, & KASS, JJ.

*Constitutional Law,* Speedy trial.  *Practice, Criminal,* Speedy trial,
    Probable cause hearing, Discovery, Dismissal.

In the circumstances, a District Court's dismissal of a complaint, despite
    the lack of specification, implied the findings of fact necessary to sup-
    port dismissal on constitutional speedy trial grounds and, therefore,
    operated as a bar to the defendant's subsequent prosecution for the
    same crime in the Superior Court.  [788-790]
Defaults on discovery by the prosecution in a criminal case, in the circum-
    stances, warranted a District Court's dismissal of a complaint which
    would operate as a bar to the defendant's subsequent prosecution for
    the same crime in the Superior Court.  [790-791]

INDICTMENT found and returned in the Superior Court on
January 6, 1978.

A motion to dismiss was heard by *Barton, J.,* and the case
was tried before him.

*Hugh W. Samson* for the defendant.

*Lila Heideman,* Assistant District Attorney, for the Com-
monwealth.

GREANEY, J.   The defendant Silva was found guilty by a
Superior Court jury of armed robbery while masked (G. L.
c. 265, § 17), on April 30, 1979.  He was subsequently sen-
tenced to a term of ten years at the Massachusetts Correc-
tional Institution at Concord.  Prior to his trial in the Supe-
rior Court, Silva had moved to dismiss the indictment "for
lack of [a] speedy trial."  This motion was grounded on a
prior dismissal in the First District Court of Essex of a com-
plaint charging the same crime.  After a hearing, a Superior
Court judge denied the motion.  We hold that the dismissal
in the District Court operated as a bar to the defendant's

subsequent prosecution for the same crime in the Superior Court. As a consequence, Silva's conviction must be reversed.

The following facts taken from the findings made by the Superior Court judge and from undisputed portions of the record are pertinent. On March 10, 1977, the defendant was arraigned and entered a plea of not guilty to a complaint issued by the First District Court of Essex charging him with the masked armed robbery on November 29, 1976, of a Salem gasoline station. Following arraignment, the case was continued to April 4, 1977, and on that date further continued, at the Commonwealth's request, to April 15, 1977. Prior to the scheduled April 15 hearing, counsel for the defendant had met with the Salem police and requested voluntary disclosure of pertinent information contained in their file in order to facilitate processing of the case; no discovery was given. At the hearing on April 15, defense counsel filed several discovery motions[1] together with a motion for a speedy trial. A District Court judge continued the case at the Commonwealth's request (apparently without the prosecutor's stating reasons for the continuance), until June 18, 1977, and ordered that discovery be completed by that date so that the probable cause hearing could be held without further delay. Between April 15 and June 18, defense counsel contacted the police and the court on several occasions to expedite compliance with the discovery orders. No discovery was provided during that two-month period.

On June 18, 1977, defense counsel filed and argued a second motion for speedy trial together with separate motions to dismiss and to "suppress" the Commonwealth's evidence because of the delinquency as to discovery. Without specifically acting on any of these motions, another District Court

---

[1] These motions consisted of motions for disclosure of the identification procedure, for statements, promises, rewards or inducements given to Commonwealth witnesses, for police department reports, for statements of Commonwealth witnesses, for statements of the defendant and for exculpatory evidence.

judge continued the case over the defendant's objection[2] to July 27, 1977, instructed the parties that no further continuances would be granted and so endorsed the defendant's motion for speedy trial. Additionally, this judge ordered the Commonwealth to complete discovery no later than July 15, and he directed a Salem police captain to personally oversee compliance with the discovery orders. The Commonwealth again failed to observe the orders.

On July 18, 1977, defense counsel filed a third motion for speedy trial, along with further motions to dismiss for failure to provide discovery or to cite the Commonwealth for "contempt" for failing to supply discovery. These motions were argued on July 27, 1977, at which time defense counsel orally requested that the complaint be dismissed for the Commonwealth's defiance of the discovery orders. The prosecutor offered no explanation for the government's conduct at this hearing or at any of the previous hearings in the District Court.[3] At that time, the District Court judge who had acted on several of the prior motions ordered the complaint "dismissed."

Subsequently, on January 6, 1978, the Essex County grand jury secretly indicted the defendant for the identical crime with which he had been charged in the District Court. The defendant was arraigned on the indictment on February 1, 1979.[4] A fourth motion for speedy trial was

---

[2] The Superior Court judge who heard the motion to dismiss made no finding as to whether an objection was made to this continuance. We are satisfied that a proper objection was made from the testimony of the first assistant clerk of the District Court, who stated that the case was continued on June 18, 1977, "over the objection of [defense] counsel," and that the objection was noted on the front of the complaint.

[3] As found by the judge in the Superior Court: "At no time . . . has the Commonwealth ever complied with the discovery orders of the District Court nor has the Commonwealth at any time provided the defendant with any of the requested discovery nor made any showing as to the availability or non-availability of the requested discovery in the District Court."

[4] The Commonwealth offered little by way of justification for this extraordinary delay. The defendant testified that he had never left his

thereafter allowed in the Superior Court on March 1, 1979, and in response to new motions for discovery certain information was tendered by the Commonwealth later that month.[5] The defendant's motion to dismiss was denied by the Superior Court judge after consideration of essentially these facts. The judge ruled that the District Court dismissal was not for lack of a speedy trial, that it could not be justified as such, and that the defendant had not been prejudiced by the Commonwealth's actions during the approximately twenty-five month period from the time of arrest to the time of the trial in the Superior Court. A renewed motion to dismiss based on testimony at the suppression hearing[6] was denied on April 24, 1979.

---

hometown area near Danvers during this period although he had moved between the date of the District Court dismissal and the indictment. He learned of the pendency of the indictment on or about January 29, 1979, when he was advised by a family member to contact the Essex district attorney's office.

[5] Insofar as relevant to our later discussion, the only exculpatory evidence provided by the Commonwealth related to a grant of immunity to a witness. The defendant was not informed of the names of any individuals, other than himself, who had been identified by the victim in connection with the robbery.

[6] At the hearing on the motion to suppress, the victim testified as to the facts of the crime which occurred on November 29, 1976, and to her involvement in the ensuing police investigation that led to the defendant's arrest. The victim stated that she had informed the investigating police officer on the day of the robbery that she thought the robber was an employee whom she had recently hired. Later, she told the police that she no longer thought that this employee was the robber but that she believed that someone who had worked at the station had committed the crime. In March, 1977, she identified the defendant as the robber and selected his picture from a book of photographs. The response to discovery (see note 5, supra) made no mention of the fact that the victim had told the police on the day of the robbery that someone else might have been the culprit. This fact came as a surprise to defense counsel during the course of the hearing. Apparently, the police had neglected to note this information in their reports and had also failed to communicate the information to the district attorney. After denying the renewed motion to dismiss, the judge ordered the Commonwealth to summons the former employee of the station and to produce a copy of his criminal record. The next day, the prosecutor reported that the employee had joined the Coast Guard and had left on a two-month assignment to the Caribbean. The defendant again renewed his motion to dismiss. The motion was denied for a third time and the trial proceeded without the defense having access to this witness.

1.  There is no question that the defendant's right to a speedy disposition of the charge, as guaranteed by the Sixth and Fourteenth amendments to the United States Constitution and by art. 11 of the Massachusetts Declaration of Rights, had attached at the time proceedings were commenced against him in the District Court. *Klopfer* v. *United States*, 386 U.S. 213, 222-223 (1967). *Dillingham* v. *United States*, 423 U.S. 64, 65 (1975). *United States* v. *Lovasco*, 431 U.S. 783, 788-789 (1977). *Commonwealth* v. *Hanley*, 337 Mass. 384, 387, cert. denied, 358 U.S. 850 (1958). *Commonwealth* v. *Thomas*, 353 Mass. 429, 431 (1967). These constitutional guaranties oblige the Commonwealth to move aggressively towards prompt disposition (see now Mass.R. Crim.P. 36(a)(2)(A) and 36(b), 378 Mass. 909 [1979]), and where a continuance becomes necessary, to explain to the court's reasonable satisfaction why postponement should be countenanced. See now Mass.R.Crim.P. 10(a)(1), 378 Mass. 861 (1979); District Court Standards of Judicial Practice: Case Flow Management § 3301 (1980).[7] "The delay must not be purposeful or oppressive" (*Pollard* v. *United States*, 352 U.S. 354, 361 [1957]), for "encouragement of delay is fatal to the vindication of the criminal law." *Cobbledick* v. *United States*, 309 U.S. 323, 325 (1940). And "[w]hen a person charged with [a] crime is willing to proceed . . . to trial, no delay on the part of the prosecution is reasonable, except only that which is necessary for proper preparation and to secure the attendance of witnesses." *Commonwealth* v. *Thomas*, *supra* at 431, quoting from 1 Cooley, Constitutional Limitations 646 (8th ed. 1927).

Apart from the constitutional constraints, G. L. c. 276, § 35, imposes a statutory prohibition against the granting of

---

[7] Standard 3:01 provides as to all criminal matters in the District Court that "[m]otions for continuances should be in writing and be supported by information explaining (1) when the need for the continuance arose, (2) what the grounds for the continuance are, (3) the measures taken to avoid seeking a continuance, and (4) the earliest date all parties will be ready to proceed. Continuances as to probable cause hearings are also limited by the terms of G. L. c. 276, § 35.

delays in the District Court in excess of "ten days at any one time against the objection of the defendant." The legislative policies expressed by this statute have been held to be similar to those expressed by the statutory speedy trial guaranty contained in G. L. c. 277, § 72A. *Commonwealth* v. *Ludwig*, 370 Mass. 31, 33-34 (1976). *Commonwealth* v. *Fields*, 371 Mass. 274, 281-282 (1976). If the statutory directive of G. L. c. 276, § 35, is violated "a decision to dismiss on speedy trial grounds could [be] warranted" (*Commonwealth* v. *Ludwig, supra* at 33), and such a circumstance alone "triggers an examination as to whether the delay was excusable and whether the defendant was prejudiced thereby." *Commonwealth* v. *Boyer*, 6 Mass. App. Ct. 938 (1978). *Commonwealth* v. *Ludwig, supra* at 34 n.1. See now Mass.R.Crim.P. 36(c), 378 Mass. 910 (1979). Once it is determined that the dismissal of the complaint in the District Court properly can be treated as a dismissal based on the denial of the right to a speedy trial, its consequence "should be absolute discharge . . . [which] forever bar[s] prosecution for the offense charged and for any other offense required to be joined with that offense." *Commonwealth* v. *Ludwig, supra* at 34, quoting from and adopting ABA Standards, Speedy Trial § 4.1 (1974).

On the findings made in the Superior Court, accompanied by the record before that court, we are satisfied that the District Court's dismissal of the complaint, despite the lack of specification, implied the findings of fact necessary to support dismissal on constitutional speedy trial grounds, and that the various rulings of the Superior Court judge to the contrary were erroneous. None of the delay at the District Court level can be attributed to the defendant, who vigorously pressed for a speedy hearing. The prosecution's delays could have been found to be intentional and to have prejudicially hampered effective preparation of a defense.[8]

---

[8] The opportunity for the defendant to obtain discovery at the District Court level and to establish a record there which could be used for impeachment in later proceedings was altogether lost. See *Commonwealth*

These factors, coupled with the express violation of G. L. c. 276, § 35, are to be weighed heavily against the government. See *Barker* v. *Wingo,* 407 U.S. 514, 531 (1972). The Commonwealth cannot seek refuge behind the argument that the District Court judge in effect ordered dismissal without prejudice and imposed only a discovery sanction. As discussed in part 2 of this opinion, the failure to provide discovery on these facts would separately warrant dismissal. Furthermore, the government's failures in this case as to discovery are intrinsically linked with the defendant's right to a speedy trial.[9]  When faced with a third motion for a speedy hearing, other motions seeking impositions of ultimate sanctions against the Commonwealth, the foregoing chronology of events, and the order that there were to be no further continuances, the District Court judge chose to order the complaint dismissed. In the circumstances, we think that the decision of the District Court judge was a proper one and that his action implied findings sufficient to establish a violation of the defendant's right to a speedy trial.

2. We also think that the prosecution's defaults on discovery warranted an order of dismissal which would bar a subsequent indictment. Under our system, the probable cause hearing conducted in the District Court is a critical stage of the criminal process. *Commonwealth* v. *Britt,* 362 Mass. 325, 330-331 (1972), and cases cited. In connection

---

v. *Britt,* 362 Mass. 325, 330-331 (1972); Smith, Criminal Practice and Procedure § 605 (1970). The Commonwealth's delay in the District Court caused the inordinate delay in obtaining the indictment and could be found to have been an important factor in the loss of potential exculpatory evidence with respect to the gasoline station's employee who was first identified by the victim as the possible perpetrator of the crime (see note 6, *supra*).

[9] The facts that the dismissal did not contain the words "with prejudice" and that the District Court did not possess final jurisdiction over the crime do not affect the result once it is determined that the dismissal was based on speedy trial grounds. See *Commonwealth* v. *Fields,* 371 Mass. at 275, 282 & n.11. Of course, it would have been better practice for the District Court judge to have clearly identified the basis for his action and to have stated whether the dismissal was with prejudice.

with that hearing, it is essential that the District Court have the power to enforce any of its orders which are reasonably designed to provide the means for intelligent consideration of probable cause and to speed that part of the process along. The Commonwealth's evasive tactics in the District Court amounted to a concession that the case against the defendant had yet to be prepared. It is obvious that the Commonwealth felt that it could cavalierly disregard the orders of several District Court judges and bypass any meaningful sanction by seeking an indictment. This course of conduct impermissibly encroached on a constitutional right and, in addition, constituted "an act of effrontery . . . [which] was hardly conducive to inspire in the public respect for our District Courts or confidence in the administration of justice." *Commonwealth* v. *Thomas*, 353 Mass. at 432.

The judgment is reversed, the verdict is set aside and the indictment is to be dismissed.

*So ordered.*