COMMONWEALTH *vs.* KENNETH RAPOSA
(and companion cases[1]).

Bristol.    April 8, 1982. — June 30, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Nolle prosequi.  *District Attorney.   Court Reorganization Act.*

The Court Reorganization Act, St. 1978, c. 478, did not affect the power of a district attorney to seek an indictment in the Superior Court despite pending proceedings for the same offense in a District Court and to nol pros the case in the District Court.  [668]

In the circumstances, a district attorney did not improperly exercise his prosecutorial prerogative in nol prossing complaints in a District Court after a trial date had been set and discovery had commenced and in seeking indictments in the Superior Court for the same offenses. [669] LIACOS, J., concurring.

INDICTMENTS found and returned in the Superior Court Department on December 5, 1980.

Motions to dismiss were heard by *Taveira,* J., and the cases were reported by him to the Appeals Court.  The Supreme Judicial Court ordered direct review on its own initiative.

*William F. Long, Jr.,* for the defendants.

*Raymond P. Veary, Jr.,* Assistant District Attorney, for the Commonwealth.

NOLAN, J.   In this case we are asked to determine whether, subsequent to enactment of the Court Reorganization Act (St. 1978, c. 478), a district attorney may properly seek indictments in the Superior Court and subsequently nol pros complaints of identical charges in a District

---

[1] Against John Mello, Joseph Marques and Barbara Marques.

Court which has concurrent trial jurisdiction of the charges. We hold that, at least in the circumstances of this case, the district attorney did not improperly exercise his prosecutorial prerogative.

The defendants were charged with various offenses under G. L. c. 271, §§ 17 and 17A.[2] The charges were originally brought by complaint in the District Court Department. The defendants were arraigned and waived their rights to a trial in a jury of six session.[3] The complaints were set for trial. Discovery motions were filed and the Commonwealth responded and asked for a continuance to answer the discovery motions.

Prior to the expiration of the continuance, the office of the district attorney sought and received indictments from a grand jury on identical charges. The prosecutor moved to dismiss the matters in the District Court, which motion was denied.[4] Subsequently, and before the date set for trial in the District Court, the defendants were arraigned in the Superior Court and the assistant district attorney filed a nolle prosequi at the District Court clerk's office.[5]

All parties and witnesses appeared in the District Court on the day scheduled for trial. The prosecutor nol prossed the cases in open court. The defendants filed motions to dismiss which were denied by the judge. Subsequently, the defendants filed motions to dismiss in the Superior Court based on the facts that they had been arraigned for offenses within the original jurisdiction of the District Court, that

---

[2] In particular, the defendants were charged with being found with apparatus used for registering bets, allowing a telephone to be used for gaming, allowing premises to be used for gaming, using a telephone for gaming, and the registering of bets.

[3] The defendants retained their right to a subsequent trial by a jury of six persons in the District Court Department. G. L. c. 218, § 26.

[4] The District Court judge stated: "I'm not going to allow the D.A. to pick the court that he wants to try these cases in."

[5] The Superior Court judge who reported this case stated that it was the practice of the District Court involved to require that a nolle prosequi be filed in open court and placed on the record.

discovery motions had been filed and answered by the Commonwealth, that the defendants had waived a first instance jury trial, and that a trial date had been set. The Superior Court judge denied the motions and reported the case to the Appeals Court pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979). We transferred the case to this court on our own motion.

It has long been the rule in the Commonwealth that the pendency of a criminal matter in a District Court does not preclude a prosecutor from seeking an indictment for the same offense. *Commonwealth* v. *Buck*, 285 Mass. 41, 43-44 (1933). *Klous* v. *Municipal Court of the City of Boston*, 251 Mass. 292, 295-296 (1925). *Commonwealth* v. *Xiarhos*, 2 Mass. App. Ct. 225, 229 (1974). This rule has not been altered by the Court Reorganization Act. *Commonwealth* v. *Jones*, 9 Mass. App. Ct. 103, 112 (1980), aff'd in part and rev'd in part, 382 Mass. 387 (1981) (indictment not barred by nolle prosequi of original complaint for vehicular homicide).

Eliminated by court reorganization were appeals from the District Court to the Superior Court. St. 1978, c. 478, § 189. The defendants argue that this change in the law takes from a prosecutor the power to seek an indictment and to nol pros a case in a District Court. Briefly, we understand the defendants' argument to conclude that, as the purpose of court reorganization was to improve the management of court dockets and to provide speedier trials, a prosecutor no longer has the power to seek an indictment once the District Court Department has commenced its procedural process. The defendants' brief sheds little light on the reasoning beyond the conclusion.[6]

---

[6] The defendants also argue that the prosecutor's decision to nol pros the case was an act of effrontery to the District Court which should be rebuked. See *Commonwealth* v. *Thomas*, 353 Mass. 429 (1967). In *Thomas* the prosecutor nol prossed the case on the day the trial was to commence because the judge refused to grant an unwarranted continuance. In the instant case, the prosecutor filed his nolle prosequi several days before trial and renewed such filing in open court on the day set for trial. While the defendants suggest that the prosecutor's motive behind the nolle

Strongly opposed to the defendants' contention is the language of St. 1978, c. 478, § 1, set out fully in the margin.[7] Of principal importance is the final sentence of § 1, which states in pertinent part that "this act provides for increased powers, duties and responsibilities of certain judicial and non-judicial personnel, without in any way impairing the tenure and existing powers and authority of such personnel." Coupled with the above quoted language from the statute is the principle that "[i]t is not to be lightly supposed that radical changes in the law were intended where not plainly expressed." *Commonwealth* v. *Germano*, 379 Mass. 268, 273 (1979), quoting from *Ferullo's Case*, 331 Mass. 635, 637 (1954). While the Court Reorganization Act effectuated great changes in the Commonwealth's court system, we hold that a prosecutor's powers to seek indictments and to nol pros complaints and indictments were not affected by the Court Reorganization Act.[8] The order of the Superior Court judge, denying the motions to dismiss, is affirmed.

*So ordered.*

---

prosequi was that he was not prepared for trial, the facts that the defendants had already been arraigned in the Superior Court as a result of indictments and that, on the day scheduled for trial in the District Court, the Commonwealth appeared with all its witnesses, belie the defendants' allegation. *Commonwealth* v. *Thomas, supra,* is inapposite to the case at bar.

[7] Statute 1978, c. 478, § 1, states: "It is the intent of the general court to promote the orderly and effective administration of the judicial system of the commonwealth. To that end the provisions of this act provide for an administrative consolidation of the several courts of trial jurisdiction, so as to encourage a broader availability of personnel and other resources for the hearing of all causes on an equitable basis by the several justices of the trial court, so-called, without in any way derogating from the rights of parties to all proceedings and without in any way impairing the validity of all judgments and orders of duly appointed justices in the commonwealth. Also in furtherance of the aforementioned intent, this act provides for increased powers, duties and responsibilities of certain judicial and non-judicial personnel, without in any way impairing the tenure and existing powers and authority of such personnel."

[8] We would not look with favor, however, on a prosecutor's deliberate obstruction of the criminal process and waste of judicial resources by waiting until the day of trial in the District Court to seek indictments.

LIACOS, J. (concurring). The Superior Court judge, who denied the defendants' motions to dismiss, but reported the question, concluded that the assistant district attorney was empowered to act as he did. The judge, however, looked with disfavor on such conduct. I share his sentiments. If the removal of the cases from the District Court in these circumstances was not perhaps an "act of effrontery" to that court such as was seen in *Commonwealth* v. *Thomas*, 353 Mass. 429, 432 (1967), it was an affront at least to the spirit of the Court Reorganization Act (Act). St. 1978, c. 478. One goal of the Act was the disposition of minor criminal cases promptly and efficiently by consolidation of the several courts of trial jurisdiction. See St. 1978, c. 478, § 1; *Lydon* v. *Commonwealth*, 381 Mass. 356, 358-359 & n.4 (1980). Toward this end, jurisdiction of de novo appeals from conviction of crimes tried before a District Court was taken from the Superior Court Department. G. L. c. 212, § 6, as amended through St. 1978, c. 478, § 117. At the same time, the right of de novo trial of offenses tried initially to a judge of a District Court was limited to the jury of six sessions of the District Court Department. G. L. c. 218, § 26A, inserted by St. 1978, c. 478, § 188. G. L. c. 218, § 27A, inserted by St. 1978, c. 478, § 189. G. L. c. 278, § 18, as amended through St. 1978, c. 478, § 302.

This reflects, I think, a legislative intention that trials of offenses wholly within the jurisdiction of the District Court Department should, once begun there, be fully resolved within that department. This intention is especially served, from the standpoint of effective case management if from no other, with regard to proceedings which have progressed to the extent seen in the case at bar. Here, the Commonwealth initially elected to prosecute complaints at the District Court level. A trial date was set and discovery commenced. There is no indication that the pending District Court action was viewed as involving anything other than trial on the merits. G. L. c. 218, § 30. *Corey* v. *Commonwealth*, 364 Mass. 137, 141 n.7 (1973). *Commonwealth* v. *Crosby*, 6 Mass. App. Ct. 679, 681-682 (1978). There is,

however, a suggestion, arising out of the timing of events, that the indictment was sought either because the matter was progressing in the District Court at a pace faster than the district attorney wished, or because he was engaging in "forum shopping." This "suggestion" of course is not strong enough to bring the case within the purview of *Commonwealth* v. *Thomas, supra*. Nevertheless, I believe the action of the prosecutor was "hardly conducive to inspire in the public respect for our District Courts or confidence in the administration of justice." *Id.* at 432. Cf. *Commonwealth* v. *Silva*, 10 Mass. App. Ct. 784, 791 (1980). While the prosecutor may have had the power to act as he did in the circumstances of this case, his actions seem to me to have been neither prudent nor factually justified. Such actions certainly were not consistent with an awareness of crowded Superior Court dockets. His actions appear to me to have caused an unexplained and unnecessary waste of limited judicial resources in both the District and the Superior Court Departments of the Trial Court, as well as of this court.