KENNETH S. BRACH & another[1] *vs.* CHIEF JUSTICE OF THE
DISTRICT COURT DEPARTMENT & another.[2]

Suffolk.   December 8, 1981. — June 21, 1982.

Present: WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Separation of powers of government, Judiciary.
    *Practice, Civil*, Standing.  *Moot Question.  District Court Department.*
    *Registrar of Motor Vehicles.  Motor Vehicle*, License to operate.

The validity of an administrative regulation promulgated by the Chief
    Justice of the District Court Department under which, upon convic-
    tion of certain motor vehicle offenses, including operating a motor
    vehicle while under the influence of intoxicating liquor, motorists
    were required to surrender their drivers' licenses to the court, present-
    ed an issue of public importance, capable of repetition yet likely to
    evade review, and where the issue had been fully argued in an adver-
    sary proceeding, this court expressed its opinion thereon, notwith-
    standing the fact that the licenses at issue in the case had been revoked
    by the Registrar of Motor Vehicles.  [532-533]
The Chief Justice of the District Court Department had neither explicit
    statutory authority under G. L. c. 211B, §§ 9 and 10, or under c. 218,
    §§ 42A and 43 through 43D, nor inherent power in the circumstances
    to promulgate an administrative regulation under which, upon con-
    viction of certain motor vehicle offenses, including operating a motor
    vehicle while under the influence of intoxicating liquor, motorists
    were required to surrender their drivers' licenses to the court for trans-
    mittal to the Registrar of Motor Vehicles.  [533-536]
Article 30 of the Declaration of Rights of the Massachusetts Constitution
    prohibits the Chief Justice of the District Court Department, an officer
    of the judicial branch of government, from acting as an agent for the
    Registrar of Motor Vehicles, an officer of the executive branch, with
    respect to the promulgation and enforcement of an administrative
    regulation under which, upon conviction of certain motor vehicle
    offenses, including operating a motor vehicle while under the in-
    fluence of intoxicating liquor, motorists were required to surrender

[1] Donald Corbin, Jr.

[2] Registrar of Motor Vehicles.

their drivers' licenses to the court for transmittal to the Registrar. [536-538]


CIVIL ACTION commenced in the Superior Court Department on December 9, 1980.

On transfer to the Supreme Judicial Court for the county of Suffolk the case was reported by *Liacos*, J.

*David G. Sacks* (*Geraldine Murphy Mortell* with him) for the plaintiffs.

*Joan C. Stoddard*, Assistant Attorney General, for the defendants.

LYNCH, J.   In this action, the plaintiffs challenge the validity of Administrative Regulation No. 2-79 (AR 2-79) (promulgated by the Chief Justice of the District Court Department) under which, upon conviction of certain motor vehicle offenses, they were required to surrender their drivers' licenses to the court. We hold that the challenged regulation, although it is a sensible solution to a serious public problem, is invalid.[3]

1. *Background and statutory scheme.*   General Laws c. 90, § 24 (1) (*a*) and (2) (*a*), as amended, lists a number of motor vehicle offenses and the respective penalties for conviction thereof.   General Laws c. 90, § 24 (1) (*b*), states that "[a] conviction [of one of the offenses listed in § 24 (1) (*a*)][4] shall be reported forthwith by the court or magistrate to the registrar, who shall revoke immediately the license or the right to operate of the person so convicted." Subsection (2) (*b*), imposes substantially the same obligations[5] upon the

---

[3] The plaintiffs also request injunctive relief.   For the reasons discussed here, we do not find it necessary to grant their request.

[4] The offenses listed in G. L. c. 90, § 24, (1) (*a*) are:   operating a motor vehicle while under the influence of intoxicating liquor; and operating a motor vehicle while under the influence of a narcotic or other drug or vapor.

[5] General Laws c. 90, § 24 (2) (*b*), as amended by St. 1964, c. 200, § 4, requires the court or magistrate to report convictions to the Registrar, "who may in any event, and shall unless the court or magistrate recommends otherwise, revoke immediately the license . . . of the person so convicted."

court or magistrate and Registrar with respect to convictions of the offenses listed in subsection (2) (a).[6] General Laws c. 90, § 22, requires the Registrar to notify in writing any person whose license or right to operate is or will be suspended or revoked.

Prior to promulgation of AR 2-79 by the Chief Justice of the District Court Department, three or four months usually elapsed between the date of conviction and the date a license suspension or revocation, required or permitted by the statute, became effective. After studying the situation, a joint task force of the District Court Department and the registry recommended measures to speed up this process. The recommendations of the task force resulted in promulgation of AR 2-79.

The regulation states that a defendant who is convicted of certain motor vehicle offenses listed in G. L. c. 90, § 24 (1) (a) and (2) (a),[7] "*shall* surrender his Massachusetts operator's license to the court immediately, for further transmittal to the Registry" (emphasis supplied). AR 2-79, § 5 (A). The regulation directs court officials to prepare an abstract of the offense on the same day as the event being reported, *id.* at § 4 (A), and states that the registry will send an official to

---

[6] The offenses listed in G. L. c. 90, § 24, (2) (a), are: (a) operating a motor vehicle negligently so that the lives or safety of the public might be endangered; (b) going away without stopping and making known name, residence and registration number after knowingly colliding with or otherwise causing injury to a person, vehicle, or other property; (c) loaning or knowingly permitting the use of one's license or learner's permit to enable another to operate motor vehicles; (d) making a false statement in an application for a license or learner's permit; (e) knowingly making a false statement in an application for registration of a motor vehicle; and (f) using a motor vehicle without authority knowing such use is unauthorized.

[7] These offenses, properly characterized as "the more serious cases" by the Chief Justice of the District Court Department, are: (a) operating a motor vehicle while under the influence of intoxicating liquor; (b) operating a motor vehicle while under the influence of a narcotic or other drug or vapor; (c) operating a motor vehicle negligently so that the lives or safety of the public might be endangered; and (d) going away without stopping and making known name, residence and registration number after knowingly colliding with or otherwise causing injury to a person, vehicle or other property.

visit the court at scheduled intervals to take possession of prepared abstracts of convictions and surrendered licenses.[8] *Id.* at §§ 4 (C) & 5 (C). Following the implementation of AR 2-79, the time period between conviction and subsequent license revocation by the registry averaged three to four weeks.

On December 8, 1980, plaintiff Brach was convicted in the Holyoke Division of the District Court Department of operating under the influence of intoxicating liquor (G. L. c. 90, § 24 [1] [*a*]), and surrendered his license to court personnel only after being ordered to do so by the judge. The directive to surrender his license was not part of the judge's sentencing procedure, but was given pursuant to AR 2-79. Brach appealed his conviction to the jury session of the Springfield Division of the District Court Department and, on February 24, 1981, he was again convicted of operating a motor vehicle while under the influence of intoxicating liquor. He was ordered by the judge to pay a fine. His license was revoked by the registry on January 20, 1981, for an indefinite period. He took no appeal from that revocation.

On December 11, 1980, plaintiff Corbin pleaded guilty to and was convicted of going away without stopping and making known his name, residence, and registration number after knowingly colliding with or otherwise causing injury to property. G. L. c. 90, § 24 (2) (*a*). He, too, surrendered his license only after being ordered to do so by the judge. The directive to surrender his license was not part of the usual sentencing or probation procedure, but was given pursuant to AR 2-79. Corbin appealed his sentence to the jury session of the Springfield Division of the District Court Department. On appeal, his sentence was reduced from two months to seven days in the Hampden County house of correction, and he was placed on two years' probation.

---

[8] The regulation provides for similar treatment of licenses voluntarily surrendered in connection with a continuance without a finding on the charges listed in note 7, *supra*. AR 2-79, § 6 (A), (B), and (C). See G. L. c. 90, § 24E.

Corbin's license was revoked on February 5, 1981, for an indefinite period, but his right to operate a motor vehicle has since been reinstated.

Brach commenced this action on December 9, 1980, in the Superior Court in Hampden County. Three days later, he amended his complaint to add Donald Corbin, Jr., as a plaintiff, to strike the presiding justice of the Holyoke Division of the District Court (the original defendant) as party defendant, and to add the Chief Justice of the District Court Department (Chief Justice), and the Registrar of Motor Vehicles (Registrar) as defendants. The plaintiffs also sought certification as a class, pursuant to Mass. R. Civ. P. 23 (b), 365 Mass. 767 (1974).

On December 18, 1980, on motion of the defendants, the case was transferred to this court pursuant to G. L. c. 211, § 4A. After a hearing before a single justice of this court, the plaintiffs' requests for preliminary and temporary injunctive relief and for certification as a class were denied. The parties submitted a statement of agreed facts and, later, an addendum to that statement. On June 1, 1981, on a joint motion by all parties, the single justice reserved and reported the case to the full court.

The plaintiffs have requested injunctions against the defendants restraining them permanently from carrying out the duties detailed in AR 2-79, and have asked for a determination that this regulation be declared null and void. We hold that the regulation is invalid. We do not, however, find it necessary to grant the injunctive relief requested.

2. *"Standing" and "mootness."* The defendants ask that we dismiss the case on the ground that, since the plaintiffs' licenses have now been revoked by the Registrar, the case is moot. In addition, they point out that Corbin's license has been reinstated. The defendants argue, in essence, that since the plaintiffs are no longer suffering a legally cognizable injury resulting from the operation of AR 2-79, they now lack standing to maintain this action.

Several considerations persuade us that dismissal on standing or mootness grounds would be inappropriate here. First,

the issue raised by the plaintiffs is one "capable of repetition, yet evading review." *Wolf* v. *Commissioner of Pub. Welfare*, 367 Mass. 293, 298 (1975), and cases cited. Accord, *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 274 (1978). "An issue apt to evade review is one which tends to arise only in circumstances that create a substantial likelihood of mootness prior to completion of the appellate process." *First Nat'l Bank* v. *Haufler*, 377 Mass. 209, 211 (1979). Since the parties have stipulated that only three to four weeks now elapse between the surrender of licenses, as required by AR 2-79, and the revocation of those licenses by the Registrar, this case clearly falls in that category. Second, declaratory relief is appropriate where, as here, the issue of the validity and application of the challenged regulation presents repetitive problems of "public interest beyond the parties." See *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxation*, 363 Mass. 685, 688 (1973). Finally, the issues raised by the plaintiffs have been fully argued to us in an adversary proceeding. Cf. *Superintendent of Worcester State Hosp.* v. *Hagberg, supra*; *Karchmar* v. *Worcester*, 364 Mass. 124, 136 (1973). None of the reasons generally offered by courts for declining to decide cases on the ground of mootness (see *Wolf* v. *Commissioner of Pub. Welfare, supra*) is applicable here. We think it is appropriate to express our opinion on the issues presented.

3. *Power of District Court Department to issue AR 2-79.* The plaintiffs assert that the defendant Chief Justice had neither explicit statutory nor inherent power to promulgate AR 2-79. We consider these arguments below.

a. *Statutory power.* We review briefly the statutes pursuant to which the defendant Chief Justice of the District Court Department may be authorized to exercise rulemaking power.

General Laws c. 211B, § 1, inserted by St. 1978, c. 478, § 110, created the office of Chief Administrative Justice of the Trial Court of the Commonwealth and that of Administrative Justice of the District Court Department, the posi-

tion now held by the defendant Chief Justice. Section 9 of that statute allows the Chief Administrative Justice, "after consultation with the administrative justice of a [particular] department, [to] promulgate administrative rules or directives *concerning the transfer of cases* entered for trial in one division to another division of the department in the same or an adjoining county. All rules promulgated by said chief administrative justice shall be subject to the approval of the justices of the supreme judicial court" (emphasis supplied). St. 1978, c. 478, § 110.

Section 10 of G. L. c. 211B sets forth the responsibilities of the defendant Chief Justice acting in his capacity as Administrative Justice of the District Court Department. The Chief Justice "shall exercise his powers . . . subject to the approval and direction of the . . . chief administrative justice [of the trial court]" and "shall have responsibility for the *administrative management of the personnel, staff services and business of* [*his*] *department*[   ], including financial administration and budget preparation, recordkeeping, information systems and statistical controls, purchasing, planning, construction, case flow management [and] assignments of sittings of the justices of [his] . . . department[   ]" (emphasis supplied). St. 1980, c. 105.

General Laws c. 218, § 42A, inserted by St. 1978, c. 478, § 197, expands on the powers and duties of the Administrative Justice of the District Court Department, authorizing the defendant Chief Justice to exercise the powers described in sections 43 through 43D of that chapter. Section 43 empowers the Chief Justice to "make and promulgate uniform rules of practice and procedure, subject to the approval of the supreme judicial court, including rules for the *preparation and submission of reports* . . . , the *granting of new trials*, and the *practice and manner of conducting business* in cases which are not expressly provided for by law" (emphasis supplied). St. 1978, c. 478, § 198. Section 43A authorizes the defendant Chief Justice to "*require uniform practices, to prescribe forms of blanks and records,* and to superintend the keeping of records by clerks" (emphasis sup-

plied). St. 1978, c. 478, § 198. Section 43D authorizes the defendant Chief Justice, "[s]ubject to the approval of the supreme judicial court . . ., [to] make uniform rules applicable to all the divisions of the [district court] department . . . providing for a simple, informal and inexpensive procedure for the determination of claims for compensation of victims of violent crimes [pursuant to G. L. c. 258A]." St. 1978, c. 478, § 200.

The rulemaking power explicitly granted to the Chief Justice, acting in his capacity as Administrative Justice, by those statutes is limited to rulemaking in aid of the transaction of the business of the District Court Department. The challenged regulation deals not with the internal workings of that department, but with the imposition of a form of penalty (surrender of license before revocation), not specifically provided for by statute but added to the penalties provided for by statute, upon persons convicted of certain crimes. We hold, therefore, that the defendant Chief Justice does not have explicit statutory authority to promulgate AR 2-79.

b. *Inherent power.* We next determine whether AR 2-79 can be found to be valid as a legitimate exercise of the inherent power of the courts of the Commonwealth. Inherent powers of the courts are those "whose exercise is essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases." *Sheriff of Middlesex County* v. *Commissioner of Correction*, 383 Mass. 631, 636 (1981). Accord, *Commonwealth* v. *Jackson*, 369 Mass. 904, 922 (1976). Although the courts' inherent powers may be recognized by statute, they exist without statutory authorization and cannot be restricted or abolished by the Legislature without violating art. 30 of the Declaration of Rights of the Massachusetts Constitution. *Id.* at 921. If AR 2-79 is a legitimate exercise of the inherent power of the District Courts, the lack of statutory authorization for that regulation is immaterial.

All the inherent powers recognized by this court, however, have involved the internal functioning of the judiciary. In

contrast, the power of the defendant Chief Justice to promulgate AR 2-79 is not "essential to the function of the judicial department, [or] to the maintenance of its authority, or to its capacity to decide cases." *Sheriff of Middlesex County* v. *Commissioner of Correction, supra.* The courts are capable of deciding cases involving violations of G. L. c. 90, § 24, and imposing penalties for violation of § 24, without the aid of the challenged regulation.[9]

Further, "[t]he very conception of inherent power carries with it the implication that its use is for occasions not provided for by established methods. . . . [Only w]hen . . . [established] methods fail, and the court shall determine that by observing them the assistance necessary for the due and effective exercise of its own functions cannot be had, or when an emergency arises which the established methods cannot or do not instantly meet, then and not till then does occasion arise for the exercise of the inherent power." *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507, 516 (1972), quoting *State ex rel. Hillis* v. *Sullivan*, 48 Mont. 320, 329 (1913). The record before us contains no evidence of a change in circumstances amounting to an emergency, nor any indication that attempts have been made, without avail, to achieve by "established methods" — legislative action — the ends which the defendants sought to attain by means of the challenged regulation. We conclude, therefore, that the defendant Chief Justice, acting in his capacity as Administrative Justice of the District Court Department, does not possess the inherent power to promulgate AR 2-79.

4. *District Court Department as "agent" of Registrar.* The defendants argue that the Registrar had power to promulgate the challenged regulation, that the Registrar delegated that power to the Chief Justice, and that the Chief Justice, in promulgating and enforcing AR 2-79, was acting

---

[9] The defendants agree that AR 2-79 "is not concerned with guidelines or procedures for adjudication of a case. Rather, it is concerned with administrative action outside the confines of adjudication."

merely as an agent of the Registrar. The record indicates that the Chief Justice and Registrar believed that they were entering into an agency relationship with respect to enforcement of AR 2-79. The issue presented is whether the Chief Justice, an officer of the judicial department of the government of the Commonwealth, may act as an agent for the Registrar, an officer of the executive department, with respect to the matters dealt with by AR 2-79. We conclude that no such agency relationship can exist under these circumstances.

The problem addressed by AR 2-79 is a significant one. The Chief Justice, the Registrar, and the joint Registry-District Court task force are to be commended for undertaking to implement procedures facilitating prompt enforcement of G. L. c. 90, § 24, and thereby removing more expeditiously from the public ways individuals convicted of serious motor vehicle offenses. Our interpretation of art. 30 of the Declaration of Rights of the Massachusetts Constitution,[10] however, requires that we hold the so called agency invalid.

Of course, the prohibition of art. 30 cannot be evaded by agreement between one branch of government and another. We have acknowledged that an agreement by the State Treasurer to handle in a purely ministerial way funds controlled by the judiciary, without any adverse effect on the rights of any owner of those funds, is permissible under art. 30. See *Clerk of the Superior Court for the County of Middlesex* v. *Treasurer & Receiver Gen., ante* 517 (1982). There, the Treasurer was carrying out a normal executive function in providing assistance in the operation of the judicial branch. If, as has been traditionally true, it is no violation of art. 30 for the executive branch to provide, maintain, and operate courthouse facilities, including courtrooms, judges' cham-

---

[10] Article 30 states that, "[i]n the government of this Commonwealth, the legislative department shall never exercise the executive and judicial powers or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them: to the end that it may be a government of laws and not of men."

bers, and law libraries, it is no intrusion on the limitations of art. 30 for the Treasurer to provide a ministerial service to the judiciary in the handling of funds received by clerks of court.

In this case, however, AR 2-79 involves judges in the performance of an executive function. The subject of license revocation has been assigned legislatively to the executive department. Thus, the procedures of AR 2-79 call for judges to perform executive functions that intrude on the rights of certain citizens. That action, not being judicial, cannot be upheld under art. 30. Therefore, the argument in favor of the validity of AR 2-79 is not aided by our decision in *Commonwealth* v. *Favulli*, 352 Mass. 95 (1967), in which the court concluded that agents of the General Court who were not legislators could also act as agents for the executive department when the task they performed, i.e., the ascertainment of facts, was not only a legislative function but was also generically like functions of agents of the executive department. *Id.* at 101. The Legislature, however, can grant the courts the ability to accomplish the same result under the traditional power of the judiciary over sentencing.

The problem presented by our disapproval of AR 2-79 could easily be solved if the Legislature were to enact legislation amending G. L. c. 90, § 24, to provide that (1) the penalties for conviction of one or more offenses such as those set forth in AR 2-79 shall include, in the trial judge's discretion, the immediate, temporary suspension of a defendant's operator's privileges pending action by the Registrar; (2) the judge, upon imposing a temporary suspension of operator's privileges, shall order the defendant immediately to surrender his operator's license to the clerk of court; and (3) the clerk, on receiving a surrendered license, shall promptly deliver that license and a report of the conviction or convictions to the Registrar or his representative so that action under existing statutes may be taken. In ordering a defendant to surrender his operator's license pursuant to this amendment, the judge would be acting within his statutory powers in imposing a legislatively determined penalty, and not as an agent of the Registrar.

A legislative solution seems appropriate to implement the intent of G. L. c. 90, § 24, as currently written. As the Chief Justice and Registrar recognized, no purpose is served by permitting persons convicted of the serious motor vehicle offenses specified in AR 2-79 to retain their operators' privileges for even a brief period when the Legislature clearly intended that such convictions should result in forfeiture. Prompt enactment of amending legislation will allow law enforcement officials, consistent with the policy expressed in art. 30 of the Declaration of Rights of the Massachusetts Constitution, to remove expeditiously from the highways of the Commonwealth those motor vehicle operators whom the Chief Justice, the Registrar, and the Legislature reasonably presumed are a danger to themselves and to the public.[11] Nothing we say in this opinion, however, is to be construed as, in any way, limiting the power currently held by trial judges to order, as a condition of probation, that a defendant surrender his operator's license and refrain from operating a motor vehicle.

We hold for the reasons discussed above, that AR 2-79 is invalid. The operator's license of the plaintiff Corbin has been reinstated, and that of the plaintiff Brach was revoked by the Registrar in accordance with statutory procedures. Injunctive relief is unnecessary; we deny, therefore, the plaintiffs' request for such relief.

*So ordered.*

---

[11] In light of our disposition of the case, we need not address the plaintiffs' due process arguments other than to note that, since the plaintiffs received a hearing before a fact finder with respect to the offenses for which they were ordered to surrender their licenses, they have little else in the way of due process rights to be vindicated. See *Boyle* v. *Registrar of Motor Vehicles,* 368 Mass. 141 (1975); *Almeida* v. *Lucey,* 372 F. Supp. 109 (D. Mass.), aff'd, 419 U.S. 806 (1974). Notice (by means of amendment of G. L. c. 90, § 24) that license suspension may occur immediately upon conviction of certain offenses clearly would suffice.