NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11929
SJC-11944


COMMONWEALTH  vs.  ANGELO TEIXEIRA.

COMMONWEALTH  vs.  CHRISTOPHER A. MEADE.



Suffolk.     January 11, 2016. - September 16, 2016.

Present:  Gants, C.J., Cordy, Botsford, Duffly, Lenk, & Hines,
JJ.[1]


Boston Municipal Court.  District Court, Probable cause hearing.
    Practice, Criminal, Probable cause hearing, Discovery.
    Moot Question.



Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on July 2, 2015.

The case was reported by Lenk, J.

Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on August 10, 2015.

The case was heard by Spina, J.


Valerie A. DePalma (Jeffrey M. Miller with her) for the
defendants.
Kathryn Leary, Assistant District Attorney, for the
Commonwealth.

_____

[1] Justices Cordy and Duffly participated in the deliberation
on this case prior to their retirements.

     John D. Donovan, Jr., Jesse M. Boodoo, Joshua D. Rovenger, & David M. Coriell, for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.
     Benjamin H. Keehn, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.


     LENK, J.  These cases stem from two unrelated, nonfatal shootings in the Roxbury section of Boston in June, 2015, and July, 2015.  Angelo Teixeira was arrested for the first shooting, and Christopher Meade for the second.  Meade and Teixeira each were charged by complaint in the Boston Municipal Court (BMC) with a number of felonies, including some that are outside the final jurisdiction of that court.  Pursuant to G. L. c. 276, § 38, probable cause hearings were scheduled for each defendant to determine whether there was sufficient evidence to bind them over to the Superior Court for trial.  The Commonwealth was ordered to provide the defendants with discovery in advance of those hearings.  Noting that judges of the BMC and the District Court Department[2] are not explicitly authorized, either by statute or by the Massachusetts Rules of Criminal Procedure, to order discovery in preparation for probable cause hearings (prehearing discovery), the Commonwealth

---

     [2] While the discussion concerns judges of the Boston Municipal Court (BMC), our analysis and conclusion apply equally to judges of the District Court.  See Victor V. v. Commonwealth, 423 Mass. 793, 796 (1996).

objected to the discovery orders and filed interlocutory appeals.

In considering these cases, we must determine whether judges of the BMC may order prehearing discovery in the absence of specific authorization from G. L. c. 276, § 38, the Rules of Criminal Procedure, or any trial court standing order.[3]  We conclude that, because such judges have inherent authority to issue orders essential to their capacity to decide cases, they may, in their discretion, order prehearing discovery.  We conclude also that, here, the judges did not abuse their discretion by issuing these discovery orders, which were limited in scope and which would have allowed defense counsel reasonably to prepare for the scheduled probable cause hearings.[4]

1.  Background.  a.  Teixeira.  On June 20, 2015, Boston police officers were dispatched to the scene of a shooting in Roxbury.  There, they encountered Teixeira, who had been shot in

---

[3] We acknowledge the amicus briefs submitted by the Committee for Public Counsel Services in both cases, and the Massachusetts Association of Criminal Defense Lawyers in Teixeira's case.

[4] Because we affirm the discovery orders on the basis of the judge's discretionary powers, we do not reach the defendants' contention that prehearing discovery is necessary as a matter of constitutional due process.  Cf. Myers v. Commonwealth, 363 Mass. 843, 854 (1973) (having disposed of case on statutory grounds, court declined to decide whether "due process requirements of the United States Constitution mandate that the defendant in a probable cause hearing shall have the right to cross-examine prosecution witnesses and present testimony in his own defence").

the leg and soon thereafter was transported to a hospital. The officers interviewed three witnesses, including an off-duty police officer from another jurisdiction, who said that they heard gunshots and that, subsequently, someone matching Teixeira's description had fired several shots at "unknown persons." Police obtained surveillance footage from a store near the scene, which showed two individuals -- one of whom is apparently believed to be Teixeira -- "remov[ing] items from the store," "flee[ing]" down the street, and "plac[ing] a white garbage bag in the rear of [a nearby] yard."[5] Police recovered two firearms from the garbage bag.

On June 24, 2015, a complaint issued in the BMC, charging Teixeira with four crimes within the final jurisdiction of that court: carrying a firearm without a license, G. L. c. 269, § 10 (a); carrying a loaded firearm without a license, G. L. c. 269, § 10 (n); possession of ammunition without a firearm identification (FID) card as a subsequent offense, G. L. c. 269, § 10 (h) (1); and assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b) (three counts). The complaint also charged him with two crimes -- carrying a firearm without a license as a second offense, G. L. c. 269, § 10 (a), (d); and committing a firearms violation having been convicted of three

_____

[5] Police reports do not reflect whether the episode recorded by the surveillance camera occurred before or after the shooting.

violent crimes or three serious drug offenses, G. L. c. 269, § 10G (c) -- for which final jurisdiction lies only in the Superior Court.[6]

Teixeira was arrested and arraigned the same day. At arraignment, the judge scheduled a probable cause hearing for July 7, 2015. Over the Commonwealth's objection, the judge granted Teixeira's motion for discovery in advance of that hearing. He ordered that the names and contact information of the Commonwealth's three witnesses be turned over by the close of business the following day, and that the surveillance footage be turned over the following week, four days before the hearing. The judge also issued a protective order "direct[ing defense counsel] not to provide to [Teixeira] any contact information on any witness." The protective order was later expanded to prevent Teixeira from learning the names of the civilian witnesses.

The following day, June 25, 2015, the Commonwealth filed a motion for reconsideration with respect to the discovery orders. A hearing on the Commonwealth's motion was scheduled for June 26, 2105. At that hearing, the Commonwealth's motion was

---

[6] During arraignment on these charges, which took place in the BMC on June 24, 2015, Teixeira made threatening gestures and statements to Boston police detectives. This resulted in additional charges of witness intimidation, G. L. c. 268, § 13B, and threatening to commit a crime, G. L. c. 275, § 2, both of which are within the BMC's final jurisdiction.

denied, and the judge ordered that the witness information be turned over by the close of business.  The judge did, however, allow the Commonwealth's motion to continue the probable cause hearing for approximately one month.

Later that day, the Commonwealth filed a notice of appeal with respect to the discovery order, a motion to stay the order pending appeal, and a request for a written ruling.  The judge stayed the discovery order until the close of business on June 30, 2015.  The judge also issued a written ruling, explaining that he had ordered discovery because

> "[a]ffording such minimal discovery as the identities of witnesses and an opportunity to view video footage of the alleged incident in advance of the probable cause hearing is essential to the defendant's ability meaningfully to exercise his rights to confrontation and to present evidence at that hearing. . . .  For example, one of the witnesses might describe the alleged shooter differently from the way that the defendant is described in the police report or from other witness accounts.  Without the witnesses' identities being disclosed to defense counsel in advance of the hearing, such discrepancies, which might raise genuine issues with respect to probable cause, could not be explored . . . ."

On June 30, 2015, the Commonwealth filed a motion to further stay the discovery order.  The judge denied the motion, and the stay expired, by its own terms, at the close of business that day.  The Commonwealth did not provide the ordered discovery.

The next day, July 1, 2015, Teixeira filed a motion seeking sanctions.  At a hearing later that day, the judge asked the

Commonwealth to address why "[nineteen] and a half hours after that stay expired . . . there's been no compliance." He noted,

> "[M]y order is in effect . . . [A]s far as I know, it hasn't been stayed, and I'm starting to get a little impatient, because I feel like I'm trying to do things procedurally in a way that respects the law and procedure. And I'm starting to feel like not everybody is adhering to the same rules."

The judge did not then issue a ruling on sanctions. Rather, he allowed the Commonwealth's request for seven days in which to respond to the defendant's motion for sanctions.

On July 2, 2015, the Commonwealth filed an emergency petition in the county court, seeking an immediate stay of execution of the discovery order, and also seeking to vacate that order. The motion for a stay was allowed on July 7, 2015, and a single justice thereafter reserved and reported the Commonwealth's petition to the full court.

On July 30, 2015, a Suffolk County grand jury returned eleven indictments against Teixeira.[7] On August 26, 2015, the

---

[7] Teixeira was charged with four counts of attempted assault and battery by means of a firearm, G. L. c. 265, § 15F; one count of carrying a firearm without a license as a second offense, G. L. c. 269, § 10 (a) and (d), and after having been convicted of three violent crimes or three serious drug offenses, G. L. c. 269, § 10G (c); two counts of possessing ammunition without a firearm identification card, G. L. c. 269, § 10 (h), and after having been convicted of three violent crimes or three serious drug offenses, G. L. c. 269, § 10G (c); one count of carrying a loaded firearm, G. L. c. 269, § 10 (n); one count of receiving a firearm with a defaced serial number, G. L. c. 269, § 11C; and two counts of witness intimidation, G. L. c. 268, § 13B.

defendant was arraigned in the Superior Court and was provided with the discovery he had been seeking from the BMC.

b. Meade. Shortly after midnight on July 5, 2015, a "black male" wearing a red sweatshirt approached a sedan parked on a street in the Roxbury section of Boston, and fired approximately three shots into the vehicle. Four people, including the driver, were inside; two passengers were hit. The driver drove away from the scene, pulled up next to a nearby police cruiser, and sought help. The two victims were taken to a hospital. Police interviewed the driver and one of the passengers,[8] and obtained a surveillance video recording of the shooting.

On July 8, 2015, police showed a photographic array, which did not contain a photograph of Meade, to the driver and one of the passengers. Neither could identify any of the pictured individuals as the shooter. On July 10, 2015, Meade was arrested and held in custody on an unrelated charge. On July 11, 2015, police presented another photographic array to the driver and to the passenger,[9] this time containing a photograph of Meade. Both separately identified Meade as the shooter.

---

[8] Because the copy of the relevant police report in the record is redacted, it is not clear whether the passenger interviewed was one of the victims.

[9] It is not clear whether this was the same passenger to whom police had shown the first photograph array.

Two days later, a ten-count complaint issued against Meade in the BMC. Three of the counts -- carrying a firearm without a license, G. L. c. 269, § 10 (a); carrying a loaded firearm without a license, G. L. c. 269, § 10 (n); and possessing ammunition without an FID card, G. L. c. 269, § 10 (h) (1) -- were within the final jurisdiction of that court. The other seven were not.[10] Meade was arraigned the same day.

At arraignment, a probable cause hearing was scheduled for August 12, 2015. In advance of that hearing, Meade sought discovery of the photographic arrays, several police reports, and contact information for witnesses mentioned in the reports. Over the Commonwealth's objection, the judge allowed Meade's motion for discovery, ordering that the discovery "be disclosed and turned over by" August 10, 2015, two days before the hearing. The judge stated that Meade's "ability to defend himself and assist his attorney in his defense [at the probable cause hearing] will be impacted severely if they're not allowed to obtain this discovery." She also entered a protective order

---

[10] The counts over which there was no final jurisdiction were four counts of armed assault with intent to murder, G. L. c. 265, § 18 (b); carrying a firearm without a license as a second offense, G. L. c. 269, § 10 (a), (d); committing a firearm violation having been convicted of three violent crimes or three serious drug offenses, G. L. c. 269, § 10G (c); and possessing a firearm while committing a felony, G. L. c. 265, § 18B.

allowing disclosure of the witnesses' contact information only to Meade's counsel.[11]

On August 10, 2015, the day discovery was to be turned over, the Commonwealth filed a petition in the county court pursuant to G. L. c. 211, § 3, seeking relief from the discovery order, and also seeking a stay of that order. A stay issued later that day, and, on August 14, 2015, the single justice vacated the order. The defendant thereafter filed a notice of appeal. On October 9, 2015, a Suffolk County grand jury returned eleven indictments against Meade.[12] On November 16, 2015, the Commonwealth provided Meade the discovery that he had sought in the BMC.

2. Discussion. The Commonwealth contends that the two judges did not have authority to order discovery in advance of the probable cause hearings. Teixeira maintains that the

---

[11] On July 31, 2015, the defendant filed a second motion for discovery, seeking other evidence referenced in the police report. The court took no action on that motion.

[12] Meade was indicted on four counts of armed assault with intent to murder, G. L. c. 265, § 18 (b); carrying a firearm without a license as a second offense, G. L. c. 269, § 10 (a) and (d), and after having been convicted of three violent crimes or three serious drug offenses, G. L. c. 269, § 10G (c); carrying a loaded firearm, G. L. c. 269, § 10 (n); assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A; two counts of assault and battery by means of discharging a firearm, G. L. c. 265, § 15E; and two counts of attempted assault and battery by means of discharging a firearm, G. L. c. 265, § 15F.

Commonwealth should be sanctioned for its failure to comply with the discovery order in the BMC.

a.   Mootness.   Because the defendants have been indicted and are no longer entitled to probable cause hearings, the discovery orders themselves are moot.  Mass. R. Crim. P. 3 (f), as appearing in 442 Mass. 1502 (2004).  Commonwealth v. Perkins, 464 Mass. 92, 95 (2013) (Perkins).  See Lataille v. District Court of E. Hampden, 366 Mass. 525, 531 (1974) (Lataille) ("return of an indictment is itself a determination of probable cause and renders unnecessary a preliminary hearing"). "However, it is within the discretion of this court to answer questions that, due to circumstances, no longer may have direct significance to the parties but raise issues of public importance and, because of their nature, may be 'capable of repetition, yet evading review.'"  Perkins, supra, quoting Lockhart v. Attorney Gen., 390 Mass. 780, 782-783 (1984).

The issue here -- whether a BMC judge may order discovery in anticipation of a probable cause hearing -- is one that "implicate[s] the . . . interests of all defendants who are so situated, and more generally [is] significant for the proper administration of the criminal justice system."  See Perkins, supra.  The issue also is likely to evade appellate review, since it becomes moot upon the return of an indictment, when a defendant loses his or her right to a probable cause hearing.

See Lataille, supra.  Moreover, "[w]e have been advised that the issue is occurring on a frequent basis in the trial courts and uncertainty exists whether an order similar to the one[s] in issue can be entered."  Commonwealth v. Durham, 446 Mass. 212, 217, cert. denied, 549 U.S. 855 (2006).  We therefore consider the issue raised in these cases.

b.  Discovery.  Defendants who are charged by complaint in the BMC, but whose cases will be finally adjudicated in the Superior Court, have a statutory right to a probable cause hearing, "unless an indictment has been returned for the same offense."[13]  Mass. R. Crim. P. 3 (f).  See Lataille, supra ("indictment is itself a determination of probable cause and renders" hearing "unnecessary").  General Laws c. 276, § 38, provides that, "as soon as may be" after a complaint issues, a BMC judge

> "shall . . . examine on oath the complainant and the witnesses for the prosecution, in the presence of the defendant, relative to any material matter connected with such charge.  After the testimony to support the prosecution, the witnesses for the prisoner, if any, shall be examined on oath, and he may be assisted by counsel in such examination and in the cross examination of the witnesses in support of the prosecution."

---

[13] This right applies both to defendants whose charges are outside the final jurisdiction of the BMC, and those who are "charged . . . with an offense within the concurrent jurisdiction of the [BMC] and Superior Courts for which the [BMC] will not retain jurisdiction."  Mass. R. Crim. P. 3 (f), as appearing in 442 Mass. 1502 (2004).

Following this hearing, the judge assesses whether "there is probable cause to believe that the defendant committed the crime or crimes alleged in the complaint" and, on that basis, whether to "bind the defendant over to the Superior Court" for final adjudication of the charges.[14]  Mass. R. Crim. P. 3 (f).

Neither the statute, the rules of criminal procedure, nor any trial court standing order provides for discovery in advance of the probable cause hearing.  The question we confront is whether a judge, in his or her discretion, nonetheless may order discovery to promote the parties' full participation in the hearing and, thereby, to assist in the assessment of probable cause.  See Myers v. Commonwealth, 363 Mass. 843, 851-852 (1973) ("primary function of the probable cause hearing of screening out 'an erroneous or improper prosecution,' . . . can only be effectuated by an adversary hearing where the defendant is given a meaningful opportunity to challenge the credibility of the prosecution's witnesses and to raise any affirmative defenses he

---

[14] The probable cause standard used at such a hearing is more demanding than "probable cause to arrest."  Myers v. Commonwealth, 363 Mass. 843, 849 (1973).  The judge

> "view[s] the case as if it were a trial and he were required to rule on whether there is enough credible evidence to send the case to the jury.  Thus, the magistrate should dismiss the complaint when, on the evidence presented, a trial court would be bound to acquit as a matter of law."

Id. at 850.

may have" [citation omitted]). For the reasons that follow, we conclude that, subject to certain limitations, a judge may order discovery to assist in this process.

General Laws c. 276, § 38, is silent on the question whether a BMC judge may issue discovery orders, or any other orders, in anticipation of a probable cause hearing. That such authority is not provided explicitly in the terms of the statute, however, does not mean that it does not exist. "[C]ourts have inherent power 'to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair [hearing], whenever his life, liberty, property or character is at stake'" (citation omitted). Commonwealth v. Charles, 466 Mass. 63, 73 (2013). We have noted, in this vein, that "the District Court [and the BMC] have the power to [issue] . . . orders which are reasonably designed to provide the means for intelligent consideration of probable cause" (citation omitted). Commonwealth v. Hinterleitner, 391 Mass. 679, 683 (1984). To the extent that a judge's order is "a legitimate exercise of [this] inherent power of the District Courts [or BMC], the lack of statutory authorization for that [order] is immaterial." Brach v. Chief Justice of the Dist. Court Dep't, 386 Mass. 528, 535 (1982).

A court's "[i]nherent powers" constitute, among other things, those "whose exercise is essential to . . . [the

court's] capacity to decide cases" (citation omitted).[15] Id.
This includes the authority "to facilitate . . . discovery."
DaRosa v. New Bedford, 471 Mass. 446, 454 (2015), quoting
Commonwealth v. Fremont Inv. & Loan, 459 Mass. 209, 214 (2011).
See Cavanaugh v. McDonnell & Co., 357 Mass. 452, 454 (1970),
quoting Owens-Illinois Glass Co. v. Bresnahan, 322 Mass. 629,
631 (1948) (power to order discovery "does not depend upon
statute, but is a part of the general jurisdiction of a court of
equity"); G. L. c. 218, § 19C ("district court and [BMC]
departments of the trial court shall have the same equitable
powers and jurisdiction as is provided for the superior court").
Accordingly, to the extent discovery is "essential" to a judge's
"capacity to decide" the question of probable cause, it is
within his or her inherent powers to order it.  See Brach v.
Chief Justice of the Dist. Court Dep't, supra at 535.

We are persuaded that, in at least some instances, a judge
reasonably could conclude that prehearing discovery is

---

[15] As a general matter, a court's inherent powers are
strongest with respect to matters of procedure.  See Brach v.
Chief Justice of the Dist. Court Dep't, 386 Mass. 528, 535
(1982) ("All the inherent powers recognized by this court . . .
have  involved the internal functioning of the judiciary").
See, e.g., Commonwealth v. Fremont Inv. & Loan, 459 Mass. 209,
213-214 (2011) (inherent authority "to issue protective
orders"); Commonwealth v. Wilcox, 446 Mass. 61, 69 (2006)
(inherent authority "to grant pretrial bail and [to] compel the
presence of a defendant at trial"); George W. Prescott Publ. Co.
v. Register of Probate for Norfolk County, 395 Mass. 274, 277
(1985) (inherent authority "to impound . . . files" [citation
omitted]).

"essential."  This is so because, at a hearing pursuant to G. L. c. 276, § 38, "complete cross-examination and the . . . present[ation of] affirmative defenses [a]re crucial and necessary to effectuate a true probable cause standard," Lataille, supra at 530; these functions, in turn, often are facilitated by material obtained through discovery.  See, e.g., Myers, supra at 852 (absent evidence obtained by defendant before hearing and used during cross-examination, "examining magistrate could not have possibly made an informed judgment").

The Appeals Court reached a similar conclusion in Commonwealth v. Silva, 10 Mass. App. Ct. 784, 791 (1980).  In holding that a prosecutor may be sanctioned for disobeying an order to provide prehearing discovery, the court presumed that a District Court judge has inherent authority to issue such an order.  See id. at 790-791 ("In connection with that hearing, it is essential that the District Court have the power to enforce any of its orders which are reasonably designed to provide the means for intelligent consideration of probable cause . . .").  Similarly, courts in other jurisdictions have held that a "court[] ha[s] the inherent power to order appropriate . . . discovery . . . ancillary to [its] statutory power to determine whether there is probable cause to hold the defendant to answer."  Holman v. Superior Court of Monterey County, 29 Cal. 3d 480, 485 (1981) (magistrates may order such discovery

notwithstanding that criminal charges are outside their final jurisdiction). See State v. Laux, 167 N.H. 698, 704 (2015) ("circuit court has the inherent authority, within its sound discretion, to order discovery prior to the preliminary hearing" even where final adjudication will take place in superior court); State v. Easthope, 668 P.2d 528, 531 (Utah 1983) ("power to compel discovery is . . . inherent in the magistrate's power to conduct" probable cause hearing). See also People v. Laws, 218 Mich. App. 447, 451 (1996) ("district court may order discovery in carrying out its duty to conduct preliminary examinations" and may do so "before the preliminary examination").[16]

This analysis notwithstanding, the Commonwealth contends that BMC judges have no authority to order prehearing discovery, and that, even if they have such authority, they ought not to exercise it.

---

[16] But see People v. Quinn, 183 Colo. 245, 251 (1973) ("discovery should not be ordered prior to the preliminary hearing"); Janklow v. Talbott, 89 S.D. 179, 183 (1975) (same). The Commonwealth cites two other decisions from other jurisdictions that are claimed to reflect a similar conclusion. Those cases however, involved materially different issues from the question before this court. See State v. O'Brien, 349 Wis. 2d 667, 682 (2013), aff'd, 354 Wis. 2d 753, 850, cert. denied, 135 S. Ct. 494 (2014) (no constitutional right to prehearing discovery); Almada v. State, 994 P.2d 299, 303 (Wyo. 1999) (prehearing discovery proper in general, but improper where judge "ordered the State to permit discovery of material which did not pertain to probable cause").

The Commonwealth notes, first, that BMC judges may not depart from the rules of criminal procedure, which make no provision for discovery in advance of a probable cause hearing. See Carlisle v. United States, 517 U.S. 416, 426 (1996) ("Whatever the scope of [a court's] 'inherent power,' however, it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure"). This silence, the Commonwealth argues, is significant because the rules anticipate other occasions when BMC judges may or must issue discovery orders. See Mass. R. Crim. P. 11 (b), as appearing in 442 Mass. 1509 (2004) (at pretrial hearing, courts "shall" consider discovery motions); Mass. R. Crim. P. 14, as amended, 444 Mass. 1501 (2005) (requiring automatic pretrial discovery of certain materials); Dist./Mun. Cts. R. Crim. P. 3 (where charges fall within court's final jurisdiction, judge "shall" issue order at arraignment "requir[ing] the parties to provide . . . discovery"). These occasions, in the Commonwealth's view, "occupy the field" and leave no room for the discretionary discovery at issue here.[17]

---

[17] The Commonwealth also argues that, if the Legislature had intended to provide defendants with a prehearing right to discovery, it would have stated so explicitly, much as it has in other contexts. See, e.g., G. L. c. 231, §§ 61-69 (right to discovery in civil litigation). The question here, however, is whether a court has discretionary authority to order discovery, not whether the Legislature provided defendants with a right to such discovery.

The Commonwealth's contention is unavailing.  The fact that the procedural rules are silent about a court's authority to exercise one of its inherent powers does not imply that the rules envision the court being deprived of that power.  See Bradford v. Knights, 427 Mass. 748, 752 (1998) ("While the Massachusetts Rules of Criminal Procedure do not expressly permit a judge to rehear a matter, no policy prohibits reconsideration of an order or judgment in appropriate circumstances," and doing so is an "inherent power of a court" [citation omitted]).  See also Reporters' Notes (2004) to Rule 1, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1343 (LexisNexis 2015) (rules are "general and flexible, prescribing only basic essentials").

Nor are we persuaded that the rules of criminal procedure cited by the Commonwealth were intended to occupy the field with respect to discovery.  Those rules concern one specific issue: the mandatory pretrial discovery process.  See Mass. R. Crim. P. 13 (e), as appearing in 442 Mass. 1516 (2004) (defendants have "right to a hearing" on motions for further discovery); Mass. R. Crim. P. 14 (requiring automatic discovery of certain materials); Dist./Mun. Cts. R. Crim. P. 3 (at arraignment, judge "shall" issue discovery order).  Even if these rules set forth the exclusive means through which mandatory pretrial discovery is to be conducted, they imply nothing about the availability or

lack of availability of the discretionary prehearing process at issue here.[18]

As mentioned, the Commonwealth maintains also that, even if BMC judges have authority to order prehearing discovery, it would be unwise for them to exercise it. The Commonwealth expresses concern that, because prehearing discovery might reveal the identities of the prosecution's witnesses, it will lead to witness tampering.[19] Such tampering is asserted to be

_____

[18] Indeed, the Commonwealth concedes in its brief that, "in the course of a probable cause hearing, there may arise circumstances in which a judge may properly order a Commonwealth witness to disclose information that is central to the determination of probable cause." The rules of criminal procedure, however, contain no explicit provision concerning such an order.

[19] The Commonwealth contends further that prehearing discovery will not provide defendants with significant practical benefits, as they can learn the essential aspects of the Commonwealth's case either at the hearing itself or when discovery is turned over upon the conclusion of a "prompt grand jury investigation." See Janklow v. Talbott, 89 S.D. at 181-182; Superior Court Standing Order 2-86 (discovery to be provided at arraignment).

In practice, however, probable cause hearings, which are meant to be conducted "as soon as may be" after a defendant is charged, see G. L. c. 276, § 38, have largely become extinct. This has happened not, as the Commonwealth contends, because "prompt grand jury investigations" usually lead to the issuance of an indictment before the scheduled date of the probable cause hearing, but because the Commonwealth routinely is granted a series of continuances -- usually between three and four months in total length -- that postpone the hearing until an indictment issues and the hearing no longer is required. See Commonwealth v. Perkins, 464 Mass. 92, 108 (2013) (Gants, J., concurring) ("a probable cause hearing in a criminal case is virtually never conducted in the courts of Massachusetts; the only preliminary

particularly problematic during the early stages of an investigation, when witnesses might not yet have revealed the full extent of their knowledge to police or to a grand jury. See Commonwealth v. Tavares, 459 Mass. 289, 305 (2011) (Gants, J., concurring) (instances of "victims or witnesses refusing to cooperate or changing or recanting earlier testimony . . . occurred in up to ninety per cent of [Suffolk County district attorney's] cases involving guns, gangs, or serious violence").

While we acknowledge the gravity of this concern, judges of the BMC have adequate means at their disposal to address it if the situation requires. For example, when discovery is warranted, they may, as here, issue protective orders concerning a witness's identity or contact information, allowing it to be disclosed only to defense counsel. See Mass. R. Crim. P. 14 (a) (6) ("judge may, for cause shown, grant discovery to a defendant on the condition that the material to be discovered be available only to counsel for the defendant"). See also Berend, Less Reliable Preliminary Hearings and Plea Bargains in Criminal Cases in California: Discovery Before and After Proposition 115, 48 Am. U. L. Rev. 465, 522 n.244 (1998) ("study . . .

_____

screening of a defendant's case is conducted by a grand jury, sometimes months after the initial appearance").[20] Charges of witness intimidation, G. L. c. 268, § 13B, were pending against both defendants. In Meade's case, the Commonwealth gave as an additional reason that the shooting was an apparently "random act of violence" and that the victims and perpetrator did not know each other.

concluded that early and broad discovery in California not only encouraged more early guilty pleas, but had no impact on witness intimidation"). Where a protective order is insufficient, judges simply may deny the discovery request altogether. Cf. Cronin v. Strayer, 392 Mass. 525, 534 (1984) (trial court judges are "in the best position to weigh fairly the competing needs and interests of parties affected by discovery" [citation omitted]).

We turn now to the orders at issue here. The parties recognize that, to the extent that BMC judges have authority to order prehearing discovery, there was no abuse of discretion in ordering it in these two cases. In each, the central issue at the probable cause hearing was likely to be whether the defendants had been identified correctly by witnesses, and each defendant sought discovery of materials that would allow him to test this issue, such as police reports, photographic arrays, the identities of the witnesses, and surveillance video. See Holman v. Superior Court of Monterey County, 29 Cal. 3d 480, 485-486 (1981) (judge properly ordered "limited discovery directed to the restricted purpose of the preliminary examination"). Without these materials, as the judge in Teixeira's case reasoned, "discrepancies [regarding identification], which might raise genuine issues with respect to probable cause, could not be explored" at such a hearing.

See id. at 485 (discovery proper if has been "show[n] that such discovery is reasonably necessary to prepare for the preliminary examination").  At the same time, recognizing the Commonwealth's particularized concerns regarding witness intimidation,[20] the judges in both cases issued protective orders shielding the witnesses' contact information from the defendants, and the judge in Teixeira's case issued an order preventing the defendant from learning their names.  Given that the defendants demonstrated good cause for seeking discovery directed to the restricted purpose of the probable cause hearing, that the resulting orders were carefully circumscribed, and that they were accompanied by protective orders addressing the Commonwealth's particularized concerns, we discern no abuse of discretion.

c.  Teixeira's motion for sanctions.  Teixeira asks that this court impose sanctions on the Commonwealth for failing to comply with the BMC judge's discovery order during the period before a stay was issued by the single justice.[21]  He seeks

---

[20] Charges of witness intimidation, G. L. c. 268, § 13B, were pending against both defendants.  In Meade's case, the Commonwealth gave as an additional reason that the shooting was an apparently "random act of violence" and that the victims and perpetrator did not know each other.

[21] The discovery order was issued on June 24, 2015, took effect on June 30, 2015, and was stayed by a single justice of this court seven days later, on July 7, 2015.

dismissal of the indictments or, alternatively, imposition of another "appropriate sanction."

The Commonwealth acted inappropriately by failing to comply with the judge's order. Even if that order had been issued in error, the Commonwealth was not without its remedies. It could have, as in Meade's case, sought an immediate stay from the single justice pursuant to G. L. c. 211, § 3. Instead, it waited until eight days after the order issued -- and two days after it went into effect -- to seek such relief. The Commonwealth may not fail to pursue a timely appeal and then disobey a judge's order when the opportunity for appeal is no longer available. "Litigants may not resort to self-help remedies and unilaterally flout court decrees." Commonwealth v. Carney, 458 Mass. 418, 433 n.20 (2010). If a court issues a directive that a party believes to be unlawful, it "must be obeyed, and until it is reversed by orderly review, it is to be respected." Id., quoting Mohamad v. Kavlakian, 69 Mass. App. Ct. 261, 264 (2007).

Nonetheless, we are constrained to conclude that dismissal would not be an appropriate sanction for the Commonwealth's conduct, as "we have never upheld the dismissal of a complaint or indictment for misconduct in the absence of a showing of prejudice." Commonwealth v. Hernandez, 421 Mass. 272, 278 (1995). Teixeira has not attempted to make such a showing, nor

would he be able to do so.  See id. at 279-280 (before dismissing complaint, trial judge must determine that "the prosecutor's refusal to disclose [information following discovery order] 'caused such irreparable prejudice that the defendant could not receive a fair trial if the complaint were reinstated'" [citation omitted]).

Whether some other sanction is appropriate we leave to the discretion of the Superior Court judge in whose jurisdiction this case now lies.  See id. at 280 & n.8 (while dismissal with prejudice not appropriate, case remanded for factual findings and determination whether "some other sanction" appropriate); Reporters' Notes (Revised, 2004) to Rule 14, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1517 (rule regarding sanctions "is based on [the] assumption that the trial court is in the best situation to consider the opposing arguments concerning a failure to comply with a discovery order and to fashion an appropriate remedy").

3.  Conclusion.  The orders requiring discovery in the Boston Municipal Court are affirmed.  In Teixeira's case, the matter is remanded to the Superior Court for consideration, after any hearings that the judge may deem appropriate, whether a sanction should be imposed on the Commonwealth for its refusal to obey the Boston Municipal Court judge's order and, if so, the nature of the sanction.

So ordered.