The STATE of Utah, Plaintiff
and Respondent,

v.

Ronald Dale EASTHOPE, Defendant
and Appellant.

No. 18310.

Supreme Court of Utah.

July 20, 1983.

Lynn R. Brown, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

After conviction of aggravated sexual assault, defendant was sentenced to an indeterminate term of five years to life, with a recommendation that he serve thirty years prior to release or parole. On appeal, he urges error in the discovery of blood and hair samples and in the refusal to sequester the jury or poll them concerning possible exposure to prejudicial publicity.

On September 19, 1981, a man wearing a pillowcase mask raped a woman at knifepoint at 1010 Downington Avenue in Salt Lake City. She described her assailant's size and build. The description generally matched defendant.

1. *Blood and hair samples.* After defendant's arrest but before his preliminary hearing, a judge of the Fifth Circuit Court, in response to the State's motion, ordered defendant to "surrender hair, body and pubic hair samples together with saliva and blood fluids." (The judge denied the State's motion for a sperm sample.) In the district court, defendant made a pretrial motion to suppress the hair and blood samples on the basis that the circuit court judge was without jurisdiction to issue the discovery order. The motion was denied. On appeal, defendant relies on *Van Dam v. Morris,* Utah, 571 P.2d 1325 (1977), where we held that a city judge acting as a magistrate had no power to dismiss an accusatory pleading brought before him for preliminary examination:

> The city court does not have jurisdiction over a Class A misdemeanor. In this case the city judge acted as a committing magistrate. . . .
>
> . . . .
>
> The authority of a magistrate is purely statutory. A judge who sits as a magistrate does not carry his court or his judicial attributes with him, except to the extent they inhere in the office of magistrate.
>
> The statutory power conferred on a magistrate conducting a preliminary hearing is limited to discharging the defendant or holding him for proceedings in the district court.

*Id.* at 1326–27 (citations omitted). Since U.C.A., 1953, § 77–35–16, which authorizes discovery in criminal proceedings, speaks only of empowering "the court" to order discovery, defendant argues that a circuit court judge who is acting only as a committing magistrate has no power to compel discovery.

■ The power to compel discovery in a criminal proceeding is neither restricted to the district courts nor foreign to the office of magistrate. Section 78–4–5 expressly empowers a circuit court judge to "exercise the powers and jurisdiction of a magistrate," including conducting preliminary examinations to determine probable cause in the cases of persons charged with criminal offenses.

■ A preliminary examination is an adversary proceeding. The prosecution has the burden of going forward, and it must present "a quantum of evidence sufficient to warrant submission of the case to the trier of fact." *State v. Anderson,* Utah, 612 P.2d 778, 783 (1980). In response, the accused may cross-examine the witnesses against him, testify or call other witnesses, and present other evidence in his own behalf. Then the magistrate must determine whether there is probable cause to believe that the charged crime has been committed and that the defendant has committed it. If so, the defendant must be bound over to answer in district court. If not, the magistrate must dismiss the information and discharge the defendant. § 77–35–7.

■ The ability to obtain evidence through discovery motions prior to preliminary hearing is necessary both to the State's burden of producing evidence sufficient to establish probable cause and to the defendant's right to defend against that effort. *State v. Anderson,* 612 P.2d at 784. The power to compel discovery is therefore integral to the purpose of the preliminary hearing and inherent in the magistrate's power to conduct it. This was the conclusion of the California Supreme Court in

*Holman v. Superior Court,* 29 Cal.3d 480, 629 P.2d 14, 174 Cal.Rptr. 506 (1981), and we agree. As that court held:

> [I]t is the general rule that in the absence of contrary legislation courts have the inherent power to order appropriate pretrial discovery. *We believe a similar inherent power exists, and may be exercised, by magistrates ancillary to their statutory power to determine whether there is probable cause to hold the defendant to answer.* The magistrate's statutory role is directed toward making a preliminary assessment of the truth or falsity of the charges filed against the defendant; pretrial discovery may well assist in such a determination.

29 Cal.3d at 486, 629 P.2d at 17, 174 Cal. Rptr. at 509 (emphasis added; citations omitted).

■ Contrary to defendant's argument, § 77–35–16(h)(6)'s empowering of "the court" to permit the taking of blood, hair, and other bodily materials does not restrict these discovery powers to the district courts. In the absence of language expressly limiting "the court" to a particular court, it is reasonable to construe discovery powers as having been conferred upon both the circuit courts and the district courts as necessary for the expeditious performance of their separate responsibilities. Such a construction comports with the legislative direction that the rules of criminal procedure "shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unnecessary expense and delay." § 77–35–1(b). Indeed, the rule could hardly be otherwise where the district court, although having original jurisdiction over the offense, § 78–3–4, does not acquire jurisdiction over the defendant himself until he is bound over by the magistrate. *State v. Freeman,* 93 Utah 125, 133–34, 71 P.2d 196, 200 (1937); *State v. Trujillo,* 117 Utah 237, 243–45, 214 P.2d 626, 630–31 (1950).

■ Defendant contends that the taking of his blood sample[1] without a search war-

---

1. Defendant concedes that the taking of hair samples did not constitute an unreasonable

search and seizure even absent a search war-

rant was an unconstitutional search and seizure. We disagree. Admittedly, this case did not involve an emergency circumstance like the Court cited in approving the warrantless involuntary withdrawal of blood in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (test for blood alcohol, which body eliminates over time). However, the purpose of the warrant requirement recognized in *Schmerber* was not to exalt the formality of the warrant but to assure that the decision to compel an invasion of a person's body in search of evidence of guilt was made by "a neutral and detached magistrate." *Id.* at 770, 86 S.Ct. at 1835. That concern was fully satisfied in the circumstances of this case. Following defendant's arrest on a warrant, the State filed a motion to compel discovery of body fluids. Defendant and his counsel were notified, an adversary hearing was held, and, after denying a portion of the State's request (sperm sample), the magistrate ordered the taking of a blood sample. That course of events, which provided the defendant greater procedural protection than he has under a search warrant (notably his participation in the hearing), satisfied the constitutional requirements for the invasion of a person's body.

■ The circuit court having jurisdiction to compel discovery and there being no procedural irregularity and no claim of abuse of discretion in the discovery order, the district court properly denied defendant's pretrial motion to suppress.

2. *Sequestering or polling jury.* Defendant also contends that, in refusing either to sequester the jury or to poll them concerning their possible exposure to prejudicial publicity about his prior convictions for rape, the district court denied him his due process right to a fair trial by an impartial jury free from outside influences. *See* U.S. Const. amend. V, VI & XIV, § 1; Utah Const. art. I, §§ 7, 12.

The facts pertaining to defendant's prior convictions and the media coverage of his trial in the present case are set forth in *KUTV, Inc. v. Conder,* Utah, 668 P.2d

513, (1983), and need not be repeated here. It is sufficient for present purposes to state that the trial judge ordered the media during the trial not to publicize defendant's prior convictions or make any reference to the "Sugarhouse rapist." The media apparently complied with that order, though one television station reported in its evening broadcast on the first day of trial that defendant was being tried for rape and that the district court had entered an order prohibiting it from reporting facts about him that were already of public record. The embargoed "facts" were not further identified. The next morning, defendant moved to sequester the jury and to poll them individually as to whether they had seen the broadcast. The judge denied both motions.

■ The decision whether to sequester the jury is committed to the sound discretion of the trial court. § 77–17–9(1); *State v. Pierre,* Utah, 572 P.2d 1338, 1349 (1977), *cert. denied,* 439 U.S. 882, 99 S.Ct. 219, 58 L.Ed.2d 194 (1978); *State v. Cano,* 64 Utah 87, 101, 228 P. 563, 568 (1924); *State v. Cerar,* 60 Utah 208, 214, 207 P. 597, 599–600 (1922). In this case, there is no showing that the district court abused that discretion.

The record contains no evidence of any pretrial publicity that was potentially prejudicial and ample evidence of the court's appropriate efforts to forestall prejudice. On voir dire, it was established that none of the twenty prospective jurors knew the defendant or had heard or read about the crime. The court admonished all twenty potential jurors not to "read, hear, listen to, or see anything in the news media regarding this case" during the course of the trial. During the four-day trial, the district court employed other measures to protect the defendant. He repeatedly readmonished the jury. He ordered both counsel and all witnesses not to use the word "Sugarhouse" in referring to the area of the city in which the incident took place, but to use instead the more neutral and specific address "1010

rant. *State v. McCumber,* Utah, 622 P.2d 353, 357–58 (1980).

Downington Avenue." He ordered both counsel and all witnesses to make no mention of defendant's prior rapes or convictions of any kind. Finally, any concern that prejudice may have resulted from the jury's learning of defendant's prior crimes was rendered academic when defendant himself testified at trial concerning his prior conviction and imprisonment for two counts of rape and robbery.

For all these reasons, defendant falls far short of demonstrating that the refusal to sequester the jury resulted in "actual prejudice or a substantial likelihood" of prejudice. *State v. Andrews,* Utah, 576 P.2d 857, 859 (1978); Annot., 72 A.L.R.3d 131, 177–80 (1976).

■ Similarly, we find no error in the trial court's refusal to poll the jury concerning the evening news broadcast by one television station on the first day of trial. Relying on *United States v. Jones,* 542 F.2d 186 (4th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976), defendant argues that where "highly prejudicial information may have been exposed to the jury," 542 F.2d at 194, the trial court must make at least an initial inquiry into whether any jurors had been exposed to it. Otherwise, the accused is denied the opportunity to establish potential prejudice. But defendant fails to establish the predicate of this argument because the published information was not "highly prejudicial." As the district court concluded after personally viewing the broadcast, there was no "substantial reason to fear" that the defendant was prejudiced by the broadcast. *Id.* at 194. *See also United States v. Hankish,* 502 F.2d 71, 77 (4th Cir.1974); *State v. Keliiholokai,* 58 Hawaii 356, 359–60, 569 P.2d 891, 895 (1977); Annot., 15 A.L.R.2d 1152 (1951).

In refusing to poll the jury, the district court suggested that to question the jurors individually concerning the broadcast may have created more suspicion and prejudice against the defendant than it prevented. We agree. The nature of the challenged

broadcast did not rise to the level of "substantial prejudice" that would trigger a duty to interrogate the jury.

Conviction affirmed.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.